[Crim. No. 10427. First Dist., Div. One. Oct. 15, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
RICK ALLEN GREENE, Defendant and Appellant.

624

COUNSEL

Gregory C. Dyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Gloria F. DeHart and Rodney J. Blonien, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**SIMS, J.**—Defendant has appealed from an order committing him as a mentally disordered sex offender[1] (Welf. & Inst. Code, § 6316; and see Pen. Code, § 1237) following a jury trial in which, after suffering five admitted prior similar convictions, he was found guilty of annoying and molesting Linda M., a child under the age of 18 years, in violation of section 647a of the Penal Code, guilty of the same offense with respect to Terese S., guilty of assault of Linda M. with intent to commit rape in violation of section 220 of the Penal Code, and guilty of simple assault of Terese S. in violation of section 240 of the Penal Code, a lesser and included offense to that of assault with intent to commit rape, with which he was charged. He does not attack his commitment but alleges that the convictions on which it is based (cf. fn. 1 above) should be reversed or modified as follows: (1) since the conviction of assault with intent to commit rape and simple assault involve the same acts as the other offenses of which defendant was convicted they should be stricken from the record because they subject him to double punishment in violation of section 654

[1]On July 29, 1971, three days after the information was filed in this case (Super. Ct. No. 51641), a second action (Super. Ct. No. 51691) was filed based on a certification from a municipal court which recited that the defendant had been convicted of five counts of violating Penal Code section 647a, four counts of violating section 242, and one count of violating section 647b; that there was evidence of new offenses; and that therefore the municipal court was certifying the matter to the superior court to determine whether the defendant was a mentally disordered sex offender. Defendant was arraigned in the second action on August 2, 1971, and two psychiatrists were appointed then—a third later—to examine the defendant. Hearing on their reports was continued from time to time to November 3, 1971.

Meanwhile, on October 20, 1971, in proceedings concerning the sentencing of defendant on the verdicts returned on September 30, 1971, the court suspended criminal proceedings and appointed two psychiatrists, one of whom had been appointed in the other proceeding, to examine defendant. On November 3, 1971, both matters came before the judge who had heard the criminal procedings; they were continued to November 10, and at defendant's request a formal hearing was held in both matters on December 3, 1971. At that time in each action minute orders were entered committing the defendant for an indeterminate period.

The copy of the court's signed order of the same date in the record does not indicate to which action or actions it relates. The defendant's notice of appeal contains a reference to both action numbers. It is, therefore, assumed that the appeal is sought to review the orders in both actions. Since there is no attack on the commitment proceedings, the order of commitment in action number 51691 must be affirmed. The appeal directed to the order in action number 51641 raises questions concerning the validity of defendant's convictions which must be reviewed. (Pen. Code, § 1237, as amended Stats. 1968, ch. 315, § 2, p. 685, and § 1259; and see *In re Lopez* (1970) 2 Cal.3d 141, 148-151 [84 Cal.Rptr. 361, 465 P.2d 257]; and *In re Cantrell* (1970) 13 Cal.App.3d 139, 143-144 [91 Cal.Rptr. 362]. Cf. under prior law, *People* v. *Murphy* (1969) 70 Cal.2d 109, 114-115 [74 Cal.Rptr. 65, 448 P.2d 945].)

of the Penal Code; (2) the conviction of assault with intent to commit rape should be reduced to simple assault because there is insufficient evidence that defendant had the intent to commit rape; (3) the two convictions involving Linda M. should be reversed because the court erred in permitting the victim to identify the defendant after it was demonstrated that she was first shown an impermissibly suggestive photograph; and (4) all four convictions should be reversed because the court erred in admitting evidence of prior offenses.

An examination of the record in the light of applicable provisions of law reflects (1) that there was no error in admitting evidence of the prior offenses because evidence of similar prior conduct was properly received to show the identity, and the motive and intent of the perpetrator of the present offense; (2) that there was no error in admitting the identification testimony of Linda M. because there is evidence to support the trial court's finding that her identification of her assailant was independently derived from her observations at the time she was assaulted; (3) that the evidence fails to support the jury's implied finding that the defendant had the intent to engage in sexual intercourse by force or violence with Linda M. at the time he assaulted her and the conviction should be reduced to simple assault; and (4) that the defendant was properly convicted of the four offenses as so modified, and that since his commitment does not involve sentencing, his complaint regarding double punishment is premature. Defendant's convictions must be modified to reduce the conviction on the third count from assault with intent to commit rape (Pen. Code, § 220) to simple assault (Pen. Code, § 240), and as so modified the convictions and orders of commitment must be affirmed.

On June 4, 1971, at approximately 11:20 p.m., Terese S., a 15-year-old student at a high school in Saratoga, left a dance at school and walked with a girl friend one block to the latter's home. After standing inside the house for a few minutes, Terese proceeded to walk to her house two blocks away. Although there were no street lights in the area, the street was well lighted from nearby homes.

When Terese was approximately one block from her house, she noticed that a boy was "kind of like jogging" behind her. The boy, whom she identified in court as defendant, came up along her left side and stated that he wanted to talk with her for five minutes. Terese glanced at him and stated that she was sorry but she could not talk as she had to get home and her boy friend was waiting. Defendant pleaded with her to talk with him but she said "No" and kept walking. She said she did not want to be rude, but she did not want to carry on a conversation.

The situation became embarrassing and Terese didn't know what to say, so she glanced at him and said "Well, what's your name?" He replied "Rick." Some small talk ensued while Terese kept walking, and she finally ended up at her home. Defendant asked her once more to go with him but Terese said "No" and turned to go. Defendant grabbed her and pinned her arm with one of his arms and shoved his other hand into her vaginal area. There was quite a bit of pain as defendant shoved her two layers of clothing into the vaginal area as well.

Terese could not get her hand free for about 30 seconds but finally freed it and began hitting defendant with a felt tip pen she had been carrying. This action enabled her to break away, screaming as loudly as she could from the pain. She then ran into her home.

Terese stated at trial that she had had a chance to look at defendant once when he came alongside her, maybe once when they walked, and all the time he was attacking her. She stated that he was about 5'7" or 5'8" and thin compared to her 154 pounds.

On June 30, 1971, at approximately 11 p.m., 16-year-old Linda M. of Cupertino was returning to her home from a babysitting job about three or four blocks away. She testified that on the way she saw a man walking towards her. Her identification of this person as the defendant was objected to at trial and is discussed below. Linda stated that there were street lights on and she got a good look at defendant's face two times.

As defendant walked up to Linda, he put his arm around her waist and turned her around. He said, "Don't be afraid. I have a gun. Don't move." Linda was startled and felt something hard in her side. Defendant kept his hand around her waist, and the two started walking. Linda put her right arm around defendant's waist after he told her to do so.

Linda asked defendant what he wanted. He said, "I just want to play with you," and he moved his hand up and down her waist a little. Linda tried to get away and said "No, no." Defendant told her to stop it and be quiet. She became quiet and then broke away, running into the home of some neighbors. The police were called and a Deputy Kasper arrived about five or six minutes later. On the basis of Linda's description, which was given under circumstances set forth below, Kasper determined that defendant was involved.

After this testimony, the district attorney made an offer of proof concerning four attacks defendant was alleged to have made on one Antoinette

K. during November and December of 1969 and January of 1970. After a hearing in chambers on the degree of similarity between these incidents and those testified to by Terese S. and Linda M., Antoinette testified in court concerning these incidents. Defendant objected to this testimony as irrelevant and prejudicial. Since the propriety of allowing this testimony is challenged on appeal, it will be discussed below.

Defendant's mother testified for the defense and stated that he arrived home in Cupertino on the evening of June 30, 1971 (the night of the incident with Linda M.) at 11:15. A deputy, Ray Pantiga of the Santa Clara County sheriff's office, testified that when he was investigating the other attacks defendant was alleged to have made on a Miss K., defendant's mother told him that defendant had been at home watching television on the night that Miss K. was last attacked. Kasper had advised his sergeant, Mike Miller, to go to defendant's address on Barnhart Avenue. Miller drove by the premises that night and determined that defendant's car was not in the driveway. He did not check to see if defendant was home however.

I

The prosecution for all of the offenses against each of the two victims at the same time permitted the jury to consider, on the issues of identity and intent, the testimony of each victim in connection with the complaint of the other. Defendant concedes that since there was no motion for a severance he cannot complain of any prejudice which thereby resulted. (See *People* v. *Van De Wouwer* (1949) 91 Cal.App.2d 633, 639-640 [205 P.2d 693].) He insists, however, that it was an abuse of discretion to permit Miss K. to testify concerning the four occasions on which she was accosted by the defendant because there was a lack of similarity between the conduct of the person of whom Linda and Terese complained, and that of the defendant on the occasions to which Miss K. testified.

At the commencement of the trial, out of the presence of the jury, the defendant admitted that he had been convicted of five prior misdemeanor violations of section 647a of the Penal Code as alleged in the information. In the attendant discussion it was recognized that despite the admission the prosecution might desire to present evidence of prior similar offenses. The court instructed the prosecutor that he was not to refer to the prior offenses on the *voir dire* of the jury, and that the admissibility of such evidence would have to be discussed at such time as it was offered. After the jury was selected and before the prosecutor made his opening statement, defense counsel sought an order directing the prosecutor to furnish

her with official reports and statements concerning victims or witnesses of other offenses. Although the court indicated the request was not timely, the prosecutor offered counsel the right to make copies of such statements as he had at the next recess in the proceedings. Apparently counsel did not take advantage of this opportunity immediately. The offer was renewed at the time the prosecutor made his offer of proof, and no further complaint was made.

After the two victims had testified the People called Miss K. as a witness. At defendant's request the prosecutor was required to make an offer of proof outside of the presence of the jury. He represented to the court, as the witness subsequently testified, as follows: the incidents occurred in the latter part of 1969 and early part of 1970 (about 18 months prior to the present offenses); Miss K. was then between 15 and 16 years old; the incidents occurred in the same general Saratoga-Cupertino area; the incidents occurred in the evening when it was dark; the defendant had approached at a jog on one or more occasions; he had walked with Miss K. and grabbed her to hold her close, and, on at least one occasion, he had grabbed her in the crotch area. The defendant objected that any such evidence was premature until it was determined whether or not the defendant denied he was the person who accosted either or both of the two victims in this case, or put in issue the intent with which the acts were committed. The court after hearing argument and considering *People* v. *Cramer* (1967) 67 Cal.2d 126 (pp. 129-130) [60 Cal.Rptr. 230, 429 P.2d 582] and *People* v. *Armstrong* (1969) 275 Cal.App.2d 30 (p. 34) [79 Cal.Rptr. 668] overruled the defendant's objection.

Miss K. testified that she had seen the defendant on four occasions. The first of these occasions occurred early in November 1969 when she was walking home at nighttime. The defendant, whom she noticed following her on the opposite side of the street, crossed over, and when she asked him what he wanted, he said he wanted to have sexual intercourse with her. He grabbed her and asked her where she lived. She indicated that she lived right next door to where they were, and warned him that he should leave or she might scream. He grabbed her again; Miss K. retaliated and ran to a neighbor's house. The defendant ran away. The incident was not immediately reported.

On the second occasion Miss K. saw the defendant on her street about 8:30 p.m. When he addressed her, she hold him to leave her alone and he walked away. On that occasion Miss K. walked up the street and then backtracked in an attempt to prevent defendant from ascertaining where she lived, but the defendant remained in the area for some time. It was

following this incident that Miss K. reported the first two incidents to the authorities. According to her testimony the defendant exposed himself on each of the four occasions. Cross-examination indicated that the police reports only indicated a report of exposure on two occasions.

On the third occasion, on December 1, 1969, Miss K. turned into her street and when she turned around saw the defendant, whom she recognized from the prior occurrences, jogging down the street. On this occasion he offered her $100 to have sexual intercourse with him, and he pushed her into the bushes. She ran off to a neighbor's house.

In January 1970 the defendant accosted Miss K. in the middle of a field. He pointed out a large tree and offered her $50 to have intercourse with him. When after five minutes attempted persuasion she refused, he blocked her way. She screamed in the direction of some people working at a gas station. When he turned to look, she ran, but he grabbed her in the crotch. She successfully escaped and ran away.

 Defendant asserts that the differences in the approach to Miss K., particularly the defendant's self-exposure and the offers of money, render the incidents dissimilar to those described by the current victims, and that therefore it was prejudicial abuse of discretion to permit Miss K.'s testimony. (See Evid. Code, § 352; *People* v. *Banks* (1970) 2 Cal.3d 127, 137-139 [84 Cal.Rptr. 367, 465 P.2d 263]; *People* v. *Kelley* (1967) 66 Cal.2d 232, 238-245 [57 Cal.Rptr. 363, 424 P.2d 947]; and *People* v. *Matlock* (1970) 11 Cal.App.3d 453, 460-461 [89 Cal.Rptr. 862].) The principles are well defined. It is only their application to particular facts which cause dispute, and to some extent controversy may be avoided if the purpose of the evidence is examined.

Preliminarily it should be noted that defendant's objection that the offer of proof was premature is not well taken. In *People* v. *Archerd* (1970) 3 Cal.3d 615 [91 Cal.Rptr. 397, 477 P.2d 421], the court ruled: "There is no merit in the contention of defendant that until he puts in issue either identity, intent or other fact the People may not anticipate this and present evidence of other acts in their case in chief. It is not necessary for the defendant to raise issues before the People may meet them where this is part of the prosecution's burden. The People have the burden of establishing intent and identity." (3 Cal.3d at p. 639. See also *People* v. *Cavanaugh* (1968) 69 Cal.2d 262, 272 [70 Cal.Rptr. 438, 444 P.2d 110] [cert. den. (1969) 395 U.S. 981 (23 L.Ed.2d 768, 89 S.Ct. 2139)]; *People* v. *Kelley, supra,* 66 Cal.2d 232, 241-243; *People* v. *Armstrong,*

*supra,* 275 Cal.App.2d 30, 34; *People* v. *Covert* (1967) 249 Cal.App.2d 81, 84-88 [57 Cal.Rptr. 220]; and *People* v. *Malloy* (1962) 199 Cal.App. 2d 219, 233-234 [18 Cal.Rptr. 545].) A caveat in *People* v. *Kelley* reading, "It is not and should not be the law, however, that defendant's not guilty plea places his intent in issue so that proof of sex offenses with others is *always* admissible." (66 Cal.2d at p. 242) went unheeded in *People* v. *Archerd, supra.* In this case it is unnecessary to attempt to reconcile the foregoing two statements because the acts described by the victims did not of themselves "indisputably show an evil intent" (66 Cal.2d at p. 243; and see *People* v. *Banks, supra,* 2 Cal.3d at p. 139; and *People* v. *Schader* (1969) 71 Cal.2d 761, pp. 775-776, fns. 13 and 14 [80 Cal.Rptr. 1, 457 P.2d 841], and accompanying text), and because it appeared that the defendant was questioning his identification by Linda, even before he offered the alibi testimony from his mother. (See points III and II below.)

Section 1101 of the Evidence Code provides in part, "(a) Except as provided in this section . . . evidence of a person's character or a trait of his character (. . . in the form of . . . evidence of specific instances of his conduct) is inadmissible when offered to prove his conduct on a specified occasion." In *People* v. *Kelley, supra,* the court stated, "The general rule is that evidence of other crimes is inadmissible when it is offered solely to prove criminal disposition or propensity on the part of the accused to commit the crime charged, because the probative value of such evidence is outweighed by its prejudicial effect. [Citations.] The purpose of the rule is to avoid placing the accused in a position of having to defend against crimes for which he has not been charged and to guard against the probability that evidence of other criminal acts having little bearing on the question whether defendant actually committed the crime charged would assume undue proportions and unnecessarily prejudice defendant in the minds of the jury, as well as promote judicial efficiency by restricting proof of extraneous crimes. [Citations.]" (66 Cal.2d at pp. 238-239. See also *People* v. *Schader, supra,* 71 Cal.2d 761, 772-773; *People* v. *Haston* (1968) 69 Cal.2d 233, 244 [70 Cal.Rptr. 419, 444 P.2d 91]; *People* v. *Cramer, supra,* 67 Cal.2d 126, 129; *People* v. *Elder* (1969) 274 Cal.App.2d 381, 393 [79 Cal.Rptr. 466]; *People* v. *Covert, supra,* 249 Cal.App.2d 81, 83; *People* v. *Malloy, supra,* 199 Cal.App.2d 219, 230; *People* v. *Crisafi* (1960) 187 Cal.App.2d 700, 706 [10 Cal.Rptr. 155]; and *People* v. *Cassandras* (1948) 83 Cal.App.2d 272, 279 [188 P.2d 546] [overruled on other grounds in *People* v. *Collins* (1960) 54 Cal.2d 57, 60 [4 Cal.Rptr. 158, 351 P.2d 326].)

Section 1101, however, continues as follows: "(b) Nothing in this section prohibits the admission of evidence that a person committed a crime,

civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts." In *People* v. *Kelley, supra,* this exception was recognized as follows: ". . . under certain limited circumstances, when the evidence is sufficiently relevant, it may be admitted even though it embraces evidence of the commission of another crime. In *People* v. *Peete, supra,* 28 Cal.2d 306 [169 P.2d 924], this court pointed out that 'except when it shows merely criminal disposition [citations], evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged,' and noted that the general test of admissibility of evidence in a criminal case is whether it tends logically, naturally, and by reasonable inference, to establish any fact material for the People or to overcome any material matter sought to be proved by the defense. (28 Cal.2d at pp. 314-315.) . . . [¶] In determining the question of relevancy, certain guidelines have been recognized. It is settled that evidence of other crimes is ordinarily admissible where it tends to show guilty knowledge, motive, intent, or presence of a common design or plan. [Citations.]" (66 Cal.2d at p. 239. See also *People* v. *Archerd, supra,* 3 Cal.3d 615, 638; *People* v. *Schader, supra,* 71 Cal.2d 761, 773; *People* v. *Haston, supra,* 69 Cal.2d 233, 244; *People* v. *Cramer, supra,* 67 Cal.2d 126, 129; *People* v. *Ing* (1967) 65 Cal.2d 603, 612 [55 Cal.Rptr. 902, 422 P.2d 590]; *People* v. *Elder, supra,* 274 Cal.App.2d 381, 393; *People* v. *Covert, supra,* 249 Cal.App.2d 81, 83-84; *People* v. *Malloy, supra,* 199 Cal.App.2d 219, 230-231; *People* v. *Crisafi, supra,* 187 Cal.App.2d 700, 706; and *People* v. *Cassandras, supra,* 83 Cal.App.2d 272, 279-281.)

In *People* v. *Kelley, supra,* the court reversed the judgment because the other offenses—an experience with an older man 24 years previously when the defendant was 19 years old, and experiences with two wives occurring between consenting adults of the opposite sex in the marriage bed—were not relevant as showing either a motive or a similar design or plan, or the requisite intent to seduce the defendant's 8-year-old stepson. (66 Cal.2d at pp. 240 and 243-245.) The court recognized, "It has been held, however, that when the defendant in testifying in his own behalf acknowledges the physical touching of the child but asserts his innocent intent, thereby definitely placing in issue the necessary element of intent, the prosecution may then introduce evidence that defendant has committed similar offenses upon persons other than the prosecuting witness in order to rebut the testimony of the defendant on a point material to the establishment of his guilt of the crime charged"; and "There seems to be a trend in recent 288 cases to admit evidence of not too remote offenses which are of a character

similar to the offense charged and are performed with persons similar to the prosecuting witness on the theory, inter alia, that it is relevant to proving intent even though the defendant has not admitted touching the prosecuting witness and has not otherwise specifically placed the element of intent in issue." (*Id*. at p. 241.) The opinion disapproved an opinion to the contrary and concluded, "It is clear that the traditional exceptions of motive, intent, etc., apply to cases involving sex offenses, . . . It is not and should not be the law, however, that defendant's not guilty plea places his intent in issue so that proof of sex offenses with others is *always* admissible. Such evidence is admissible in cases where the proof of defendant's intent is ambiguous, as when he admits the acts and denies the necessary intent because of mistake or accident. [Citations.] But where the acts, if committed, indisputably show an evil intent and the defendant does not specifically raise the issue of intent, the better reasoned cases hold that evidence of other crimes is admissible only when they were performed with the prosecuting witness [citation], or where the offenses are not too remote and are similar to the offense charged and are committed with persons similar to the prosecuting witness. Then they are admissible as showing a common scheme or plan. [Citations.]" (*Id.*, pp. 242-243.)

■ "It is for the trial court to determine whether the probative value is outweighed by the possible prejudicial effect and to admit or exclude it accordingly. [Citation.]" (*People* v. *Archerd, supra,* 3 Cal.3d 615, 638. See also Evid. Code, § 352; *People* v. *Schader, supra,* 71 Cal.2d 761, 773-774; *People* v. *Haston, supra,* 69 Cal.2d 233, 246; *People* v. *Wells* (1970) 13 Cal.App.3d 265, 270 [91 Cal.Rptr. 460]; and *People* v. *Armstrong, supra,* 275 Cal.App.2d 30, 34.) In making this determination the trial court should be guided by the following precepts: ". . . because of the sound reasons behind the general rule of exclusion, the relevancy of evidence of other crimes, and therefore its admissibility, must be examined with care. [Citation.] The evidence should be received with 'extreme caution,' and if its connection with the crime charged is not clearly perceived, the doubt should be resolved in favor of the accused. [Citations.] In every case the possibility of severing relevant from irrelevant portions of evidence should be considered to protect the accused from undue prejudice. [Citation.]" (*People* v. *Kelley, supra,* 66 Cal.2d 232, 239. See also *People* v. *Banks, supra,* 2 Cal.3d 127, 137; *People* v. *Haston, supra,* 69 Cal.2d 233, 244-245; *People* v. *Cramer, supra,* 67 Cal.2d 126, 129; and *People* v. *Elder, supra,* 274 Cal.App.2d 381, 393-394.)

In *People* v. *Schader, supra,* the court observed and expounded as follows: "Probative value and prejudice obviously are not commodities subject

to quantitative measurement. Nonetheless, we may identify some of the guidelines which courts follow in performing the balancing process described generally above. The chief elements of probative value are relevance, materiality and necessity. [¶] Before permitting the jury to hear evidence of other offenses the court must ascertain that the evidence (a) 'tends logically, naturally and by reasonable inference' to prove the issue upon which it is offered; (b) is offered upon an issue which will ultimately prove to be material to the People's case; and (c) is not merely cumulative with respect to other evidence which the People may use to prove the same issue. In determining relevance, the trial court must look behind the label describing the kind of similarity or relation between the other offense and the charged offense; it must examine the precise elements of similarity between the offenses with respect to the issue for which the evidence is proffered and satisfy itself that each link of the chain of inference between the former and the latter is reasonably strong. In order to assess materiality, the court must consider not merely the elements of the offense, but also the defendant's testimonial admissions." (71 Cal.2d at pp. 774-775, fns. omitted.)

Under the foregoing rules it is necessary to determine the issues which the evidence of prior offenses is offered to prove.

▮ In this case the jury was instructed with respect to the first two counts that under the provisions of section 647a of the Penal Code it was a crime to annoy or molest any child under the age of 18 years, and that the law "requires that the annoyance or molestation be motivated by an unnatural or abnormal sexual interest or intent with respect to children on the part of the offender."[2] With respect to the last two counts the jurors were instructed that before they could find the defendant guilty of assault with intent to commit rape ". . . you must find from the evidence that he

---

[2]The full instructions read: "The words 'annoy' and 'molest' mean to interfere with or meddle with unwarrantably so as to injure or disturb. As they are used in Penal Code No. 647a, however, the law also requires that the annoyance or molestation be motivated by an unnatural or abnormal sexual interest or intent with respect to children on the part of the offender." (See *People* v. *Carskaddon* (1957) 49 Cal.2d 423, 426 [318 P.2d 4]; *In re Sheridan* (1964) 230 Cal.App.2d 365, 372 [40 Cal.Rptr. 894]; and *People* v. *Pallares* (1952) 112 Cal.App.2d Supp. 895, 901 [246 P.2d 173].)

"The element of annoyance as provided in Section 647a is not concerned with the state of mind of the child; it is the objectionable acts of the defendant which constitute the offense, and, if the conduct of the defendant is so lewd or obscene that the normal person would unhesitatingly be irritated by it, such conduct would 'annoy or molest' within the meaning of the section." (See *People* v. *Carskaddon, supra,* 49 Cal.2d 423, 426; *People* v. *Moore* (1955) 137 Cal.App.2d 197, 200 [290 P.2d 40]; and *People* v. *McNair* (1955) 130 Cal.App.2d 696, 697-698 [279 P.2d 800].)

committed an assault, and, further, that in committing such assault he intended to commit rape."[3] The jurors were instructed generally on how intent is shown in accordance with the first paragraph of CALJIC No. 3.34, and more specifically on the sufficiency of circumstantial evidence to prove specific intent in the language of CALJIC No. 2.02, including the following admonition: "But you may not find the defendant guilty of the offense charged in Counts III and IV of this case unless the proved circumstances not only are consistent with the hypothesis that he had the specific intent to commit rape but are irreconcilable with any other rational conclusion."

At the request of the prosecution the court instructed the jury on evidence of other offenses as set forth in CALJIC No. 2.50. The copy of the instruction set forth in the clerk's transcript (Cal. Rules of Court, rule 33(a)(1), item (h); cf. subd. (a)(2)) sets forth the complete text of the instruction including the "Use Note" and the "Comment" found on page 50 of CALJIC (3d rev. ed. 1970). It is marked "Given" and subscribed by the judge at the end. It will be assumed that the instruction itself was given as a whole, and that the "Use Note" and "Comment" including the warning "In using this instruction, inapplicable numbered paragraphs should be stricken," were completely disregarded. The jury were, therefore, told that they could consider Antoinette's testimony in determining the following issues, "1. The identity of the person who committed the crime, if any, of which defendant is accused; 2. A motive for the commission of the crime charged; 3. The existence of the intent which is a necessary element of the crime charged; 4. That the defendant had knowledge of the nature of things found in his possession; 5. That the defendant had knowledge or possessed the means that might have been useful or necessary for the commission of the crime charged; 6. A characteristic method, plan or scheme in the commission of Criminal acts similar to the method, or scheme used

---

[3]This instruction (CALJIC No. 10.17) read, "Every person who assaults another with the specific intent to commit rape is guilty of a crime. [¶] There are two elements of this crime: First, an assault; and second, a specific intent to commit rape. Hence, before you may find the defendant guilty of the crime charged against him, you must find from the evidence that he committed an assault, and, further, that in committing such assault he intended to commit rape. The crime of assault with intent to commit rape is complete if an assault is made and if at any moment during the assault the aggressor intends to commit rape upon the woman assaulted, even though he abandons that intention for any reason before the consummation of the act."

The court further defined "assault" in the language of CALJIC No. 9.00 (1971 rev.), and "rape" in language extracted from the first paragraph of CALJIC No. 10.00. The jury was also told that it could find the defendant guilty of simple assault as a lesser included offense of each of the charges in the last two counts. (See CALJIC No. 17.10.)

in the commission of the offense in this case." It is obvious that items "4" and "5" had no relevancy to the charges in question. They should have been stricken, but because of their obvious irrelevancy no prejudice was occasioned by the failure to do so.

There was clearly an issue as to the motive and intent manifested by the defendant if the jurors believed the account of either of the victims concerning the acts of the person who accosted them and her testimony identifying the defendant. The prior offenses had probative value in determining the significance to be given the defendant's actions when he accosted the girls because they bore on his motive and intent. They were, therefore, properly admitted. (See *People* v. *Schader, supra,* 71 Cal.2d 761, 776-777; *People* v. *Kelley, supra,* 66 Cal.2d 232, 241 and 242-243, cf. 243-244; *People* v. *Elder, supra,* 274 Cal.App.2d 381, 396-397; and *People* v. *Malloy, supra,* 199 Cal.App.2d 219, 233.) The verdicts reflect that the jurors conscientiously weighed all of the evidence. In the counts involving Terese the verdict finding the defendant guilty of violation of annoying and molesting her is amply sustained by defendant's actions at the scene. The jury found no intent to rape and reduced the offense to simple assault. In the counts involving Linda the evidence clearly sustained the violation of section 647a of the Penal Code. The defendant's statement "I just want to play with you" may be deemed to be ambiguous, and the prior conduct of the defendant could be resorted to in order to determine his intention in making that statement.

On the issue of identity, as raised by defendant's alibi witness, in connection with the attack suffered by Linda, the propriety of the trial court's ruling is not so clear. In *People* v. *Haston, supra,* the court stated, "The important point to be made is that, when such evidence is introduced for the purpose of proving the identity of the perpetrator of the charged offense, it has probative value only to the extent that *distinctive* 'common marks' give logical force to the inference of identity. If the inference is weak, the probative value is likewise weak, and the court's discretion should be exercised in favor of exclusion." (69 Cal.2d 233, 247. See also *People* v. *Banks, supra,* 2 Cal.3d 127, 138; *People* v. *Cavanaugh, supra,* 69 Cal.2d 262, 273; *People* v. *Wells, supra,* 13 Cal.App.3d 265, 273; and *People* v. *Elder, supra,* 274 Cal.App.2d 381, 394 and 396.) It may not be reasonable to conclude in the absence of self-exposure and an offer of money that the person who accosted Linda was the same person who accosted Antoinette. Nevertheless, since defendant's identity was otherwise established (see part II below), and since the evidence of prior offenses was admissible on the issue of intent, there was no miscarriage of justice in permitting the jury to consider it on the issue of identity. (Const., art. VI,

§ 13; Evid. Code, § 353, subd. (b); Pen. Code, § 1258; and *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243] [cert. den. (1957) 355 U.S. 846 (2 L.Ed.2d 55, 78 S.Ct. 70)].)

It is also necessary to consider to what extent evidence of prior offenses may be admitted solely to establish a characteristic method, plan or scheme in the commission of criminal acts similar to the method or scheme used in the commission of the acts giving rise to the current charge, in order to establish that the current offense was in fact committed by the accused. (See *People* v. *Cramer, supra,* 67 Cal.2d 126, 129-130; *People* v. *Wells, supra,* 13 Cal.App.3d 265, 272; *People* v. *Elder, supra,* 274 Cal.App.2d 381, 395; *People* v. *Covert, supra,* 249 Cal.App.2d 81, 84-88; *People* v. *Crisafi, supra,* 187 Cal.App.2d 700, 707; and *People* v. *Cassandras, supra,* 83 Cal.App.2d 272, 281-282.) It should be noted that even in such a case, the Supreme Court has stated: ". . . it is unnecessary to prove that the prior offense is identical in every detail with the crime charged. [Citation.]" (*People* v. *Cramer, supra,* 67 Cal.2d at p. 130.) The foregoing cases appear to countenance such use of prior offenses in cases involving prohibited sexual conduct. In *People* v. *Armstrong, supra,* the court stated: ". . . similarity of action and detail showing a discernable pattern, rather than uniqueness, is the appropriate test in this case." (275 Cal. App.2d at p. 34.) It is also established, "The remoteness of the evidence usually goes to its weight, not to its admissibility. [Citation.]" (*People* v. *Archerd, supra,* 3 Cal.3d 615, 639. See also *People* v. *Ing, supra,* 65 Cal.2d 603, 612; *People* v. *Armstrong, supra,* 275 Cal.App.2d 30, 34; and *People* v. *Elder, supra,* 274 Cal.App.2d 381, 397.) Nevertheless, as in the case of using the evidence to establish identity, there is not a clear cut similarity so that it can be said that the commission of the offenses against Antoinette would alone show that the defendant committed offenses against Linda and Terese. It would have been preferable if the court had confined the use of the prior incidents to the issue of intent and motive. Despite that conclusion, and for the reasons stated above in connection with the issue of identity, no miscarriage of justice resulted from permitting the jury to consider the evidence on the sixth issue stated in the instruction.

## II

In the course of testifying to the events which have been recounted above Linda stated that she did not know her assailant and had never seen him before; that he originally was coming toward her, and she had a chance to look at him; that she was sort of watching him as he was approaching; that there were street lights and house lights on in the area,

and she had a chance to see his face before he got up to her. She further testified that she looked at him when he said he had a gun and she felt a hard object against her side; that during the incident she twice had a chance to get a good look at his face and did so. When she affirmed that she saw her assailant in the courtroom, an objection was interposed. The following testimony then was elicited out of the presence of the jury from Linda, from the neighbor to whose house Linda fled, and from Officer Kasper.

Linda testified that her assailant was about five yards away approaching her on the sidewalk when she first saw and paid attention to him; and that they walked together past two or three houses before she ran away and ran to her neighbor's house across the street. She did not look back or look out of the house or otherwise see her assailant again.

Officer Kasper arrived in response to the neighbor's phone call in from five to ten minutes. She told him what had happened and gave him the following description of the subject, "He had brown hair. He was about five eight. He was about 135 pounds, and I'd say he was wearing a jacket. He had a shirt on, but I don't know what color. I said he had pimples or pock marks on his face." She acknowledged that she had merely said that there was something on his face and that the officer suggested pock marks. (Two doctors who examined defendant following his conviction found his face was afflicted with acne.) She told the officer his hair was not long or real short, sort of medium. The neighbor and the officer confirmed that Linda first narrated what had happened and then gave a description of her assailant. The officer confirmed that when Linda told him the suspect had a very poor complexion, he suggested and she affirmed that it was "pocky."

At this point the officer advised Linda he had something out in the car that he wanted her to look at. He went out and returned with a black leather-type folding loose leaf binder book about nine by six inches in which he kept paper cards and some photographs relating to criminal elements he had run across in the Cupertino-Saratoga area. He opened the book to a black and white photograph of the defendant about two inches by two inches in size, with a number across the front. The picture showed a single front face view of defendant from the waist up without any particular background. It was stapled to paper which on its reverse has the defendant's name and address, his date of birth, his physical description, and his criminal record by reference to code section numbers.

Linda testified Kasper told her "I want you to look at this picture," and placed it on a table under a light. Although there were some other pictures

in his book, he did not intend that she should flip through the pages of the book. According to the neighbor the officer, while he was holding the book, asked her if that was the person who accosted her, and then placed the book on the coffee table. The officer testified that he set the opened book on the table underneath the light and requested Linda to look at it very carefully and take her time. All the witnesses agreed that Linda immediately identified the photograph as being a likeness of her accoster and that she cried out "That's him" or "My God, that's him," she having testified to the former statement at the preliminary hearing and to the latter at the trial.

The officer then left to make a phone call. Although he testified that he thought he took the book, Linda and the neighbor stated it was left on the table where it was further examined by Linda and the neighbor's children. Linda testified that she then turned the picture over and noticed writing on the other side, but she could not remember what it said. After Linda had identified the picture, the officer indicated to her that the subject of the picture had been in difficulty with the law over the same type of thing on previous occasions. According to the neighbor in the course of that discussion, the officer asked Linda if she had observed a particular green English sports car. The officer subsequently left, taking his book with him.

Linda testified: she had identified the defendant as the man who accosted her at the preliminary hearing, and at that time she had not been sure that the man she would see would be that man; and although the man proved to be the man whose picture she had identified, the picture did not assist her in making the identification. She said that she acknowledged the likeness in the picture because the face was the same as that of the person who assaulted her. She further stated that if she had not seen the picture at all that she would be able to identify, and she did identify, the defendant in court as the man who accosted her.

The court denied the prosecutor's motion for continuance of the hearing to secure the testimony of the neighbor's wife, his two daughters and a young man who were also all present when Linda identified the person pictured as her assailant. Following argument the court ruled that Linda could make the in-court identification.[4]

---

[4]The court stated, ". , . the Court feels that her testimony is such, as well as the corroboration, that her identification of the photograph at the time she first saw it was so emphatic, that it's not likely that her identification was tainted or suggested in any illegal or improper way. And so therefore, at least preliminarily, the Court is going to allow the witness to make the in-court identification; and I think your argument goes to the weight rather than the admissibility, something that certainly could be argued; but, for this purpose the Court is going to allow her to so testify."

Linda then identified the defendant as the young man who accosted her. She was cross-examined extensively concerning the description of the person she saw that night. It was brought out before the jury that she had identified the one picture produced by the officer and had never seen any other pictures or witnessed a lineup; that the officer had suggested the assailant had pock marks; that there was a slight discrepancy between the testimony of Linda at the preliminary hearing and the trial with respect to the language she used in indicating that the subject of the photograph was her assailant; and that at the preliminary hearing where Linda identified the defendant, and at the trial, he was the only young man present. On redirect examination, Linda explained that the question of pock marks arose when she started to describe his complexion to the officer. She told the jurors that she identified the picture the moment she saw it about 10 minutes after the incident occurred, and that there was no doubt in her mind that the defendant seated in the courtroom was the man who accosted her.[5]

In *Simmons* v. *United States* (1968) 390 U.S. 377 [19 L.Ed.2d 1247, 88 S.Ct. 967] the court considered the contention that a pretrial identification by means of photographs was, in the circumstances of that case, so unnecessarily suggestive and conducive to misidentification as to deny the accused due process of law (390 U.S. at p. 381 [19 L.Ed.2d at pp. 1251-1252]). The court recognized the danger that a witness may make an incorrect identification under the best of circumstances, and observed: "This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw . . . ." (*Id.* p. 383 [19 L.Ed.2d p. 1253].) The court, however, refused to lay down arbitrary prohibitions upon the use of photographs. It noted and concluded: "Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold

[5]Following the verdicts which found him guilty, the defendant admitted to three psychiatrists who examined him in October that he had in fact accosted Linda, although for motives and in a manner which he deemed were innocent.

that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in *Stovall* v. *Denno,* 388 U.S. 293, 301-302, and with decisions of other courts on the question of identification by photograph." (*Id.,* p. 384 [19 L.Ed.2d p. 1253], fn. citing *People* v. *Evans* (1952) 39 Cal.2d 242 [246 P.2d 636] [see p. 252] omitted. See also *Neil* v. *Biggers* (1972) 409 U.S. 188, 198 [34 L.Ed.2d 401, 410-411, 93 S.Ct. 375]; *Coleman* v. *Alabama* (1970) 399 U.S. 1, 3-4 [26 L.Ed. 2d 387, 393-394, 90 S.Ct. 1999]; *Foster* v. *California* (1969) 394 U.S. 440, 442 [22 L.Ed.2d 402, 406, 89 S.Ct. 1127]; *United States* v. *Fowler* (9th Cir. 1971) 439 F.2d 133, 134; *Mason* v. *United States* (1969) 414 F.2d 1176, 1182 [134 App.D.C. 280]; *People* v. *Lawrence* (1971) 4 Cal.3d 273, 278 and 280 [93 Cal.Rptr. 204, 481 P.2d 212] [cert. den. (1972) 407 U.S. 909 (32 L.Ed.2d 682, 92 S.Ct. 2431)]; *People* v. *Fowler* (1969) 1 Cal.3d 335, 350 [82 Cal.Rptr. 363, 461 P.2d 643]; *People* v. *Citrino* (1970) 11 Cal.App.3d 778, 782 [90 Cal.Rptr. 80]; *People* v. *Hawkins* (1970) 7 Cal.App.3d 117, 122 [86 Cal.Rptr. 428]; *People* v. *Wendling* (1970) 4 Cal.App.3d 317, 322 [84 Cal.Rptr. 310]; *People* v. *Brown* (1969) 273 Cal.App.2d 109, 111-112 [77 Cal.Rptr. 863]; and *People* v. *Neal* (1969) 271 Cal.App.2d 826, 831-832 [77 Cal.Rptr. 65] [cert. den. (1969) 396 U.S. 946 (24 L.Ed.2d 249, 90 S.Ct. 387).]

In *People* v. *Evans, supra,* the court determined that on the whole record the errors and misconduct which occurred at the trial were prejudicial because of the weakness in the identification testimony. The court observed, ". . . it can hardly be said to be in accord with principles of justice and fair play to show a complaining witness the picture of one man and then take her into a room where that man is the only occupant." (39 Cal.2d 242, 252. See also *Foster* v. *California, supra,* 394 U.S. 440, 443 [22 L.Ed.2d 402, 406-407]; *Simmons* v. *United States, supra,* 390 U.S. 377, 383 [19 L.Ed.2d 1247, 1252-1253]; *Stovall* v. *Denno* (1967) 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967]; *People* v. *Caruso* (1968) 68 Cal.2d 183, 187-188 [65 Cal.Rptr. 336, 436 P.2d 336]; and *In re Carl T.* (1969) 1 Cal.App.3d 344, 353 [81 Cal.Rptr. 655].) **(4a)** Defendant in reliance upon *United States* v. *Fowler, supra* (439 F.2d at p. 134), *Mason* v. *United States, supra* (414 F.2d at p. 1182), and *People* v. *Citrino, supra* (11 Cal.App.3d at pp. 783-784) contends that the court committed prejudicial error in admitting Linda's in-court identification of the assailant. He recognizes that "a claimed violation of due

process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it, . . ." (*Stovall* v. *Denno, supra,* 388 U.S. 293, 302. See also *Neil* v. *Biggers, supra,* 409 U.S. 188, 199 [34 L.Ed.2d 401, 411]; and *Simmons* v. *United States, supra,* 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253].) Nevertheless he insists that the exhibition of one photograph to a victim will taint the identification, in the absence of urgent circumstances such as existed in *Stovall* v. *Denno, supra.*

On the other hand ". . . as *Stovall* makes clear, the admission of evidence of a showup without more does not violate due process." (*Neil* v. *Biggers, supra,* 409 U.S. 188, 198. See also *Stovall* v. *Denno, supra,* 388 U.S. 293, 302; *People* v. *Bauer* (1969) 1 Cal.3d 368, 373-374 [82 Cal. Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398] [cert. den. (1970) 400 U.S. 927 (27 L.Ed.2d 187, 91 S.Ct. 190)]; *People* v. *Colgain* (1969) 276 Cal. App.2d 118, 128 [80 Cal.Rptr. 659]; *People* v. *Harris* (1969) 274 Cal. App.2d 826, 833 [79 Cal.Rptr. 352]; and *People* v. *Brown, supra,* 273 Cal.App.2d 109, 111-112.) The People also seek to equate the situation in this case with those cases which have upheld a face-to-face confrontation in the field "on the premise that a timely in-the-field identification procedure enhances the reliability of the identification and aids in quickly exonerating the innocent and discovering the guilty. [Citations.]" (*People* v. *Rodriquez* (1970) 10 Cal.App.3d 18, 29 [88 Cal.Rptr. 789]. See also *People* v. *Anthony* (1970) 7 Cal.App.3d 751, 764-765 [86 Cal.Rptr. 767]; *People* v. *Levine* (1969) 276 Cal.App.2d 206, 208 [80 Cal.Rptr. 731]; and *People* v. *Colgain, supra,* 276 Cal.App.2d 118, 125-127.)

Here the opportunity for prompt identification was fortuitous. The officer's studious devotion to his duties not only gave an opportunity for misidentification, as contended by defendant, but also permitted prompt ascertainment of or elimination of a possible suspect. Unlike *United States* v. *Fowler, supra,* and *Mason* v. *United States, supra,* there was no opportunity to gather other photos, if the fruits of the officer's homework were to be used in speedily initiating the investigation. In *Fowler* the court pointed out, ". . . this is not a case where the suspect was still at large and a photographic identification was not only mandatory but a matter of some urgency." (439 F.2d at p. 134.) Moreover in that case, unlike the present action, the witness in court was asked to identify the photographs preliminarily to identifying the defendant. (*Id.* See *People* v. *Martin* (1970) 2 Cal.3d 822, 830 [87 Cal.Rptr. 709, 471 P.2d 29].) In *Mason* v. *United States, supra,* the trial court had excluded evidence of the identification secured from exhibiting a single photograph of a suspect. (414 F.2d at p. 1177.) The Court of Appeals reversed the conviction because the court

permitted evidence of the victim's identification of the defendant when he appeared in court for a preliminary hearing without counsel. It held ". . . there is no exception to the *Wade* rule [*United States* v. *Wade* (1967) 388 U.S. 218, 236-238 (18 L.Ed.2d 1149, 1162-1163, 87 S.Ct. 1926)] for confrontations which occur at preliminary hearings." (*Id.*, p. 1181.) On the point at issue here the court merely observed, "The trial court was strongly of the view that no reference to the photographic identification could be made before the jury. We cannot say that this determination was error." (*Id.*, p. 1182.)

The single picture if available, as it was here, does permit on the one hand a speedy, and timely identification which immediately narrows the field of suspects and permits prompt apprehension of the person identified. It does not, however, have the compensating virtue, as would a face-to-face confrontation, of possibly enabling the suspect to regain his freedom. There is some merit in the contention that since the suspect has not been arrested, there is no urgent need for immediate action which would preclude the authorities from assembling and presenting photographs of several similar individuals. (See *Mason* v. *United States, supra,* 414 F.2d 1176, 1182; and cf. *United States* v. *Fowler, supra,* 439 F.2d 133, 134 where the same reasoning was applied when the defendant was under arrest.) It is unnecessary to resolve this conflict because the application of established principles of review demonstrates that the trial court's ruling should be upheld.

■ In *People* v. *Rodriquez, supra,* this court outlined the procedure to be followed in determining a claim of a violation of due process of law because of the identification procedures used, as follows: "Where it is asserted under the *Stovall* rule that the pretrial identification procedure was so unfair as to taint the in-court identification, the proper procedure requires that the trial court determine initially, outside the presence of the jury, whether such procedure was unfair. [Citation.] This procedure, since it is invoked on grounds of due process, requires that the defendant demonstrate that the pretrial confrontation 'resulted in such unfairness that it infringed his right to due process of law.' (*Stovall* v. *Denno, supra,* at p. 299 . . . .) The resolution thereof depends upon a consideration of all the facts and circumstances. [Citations.] If there are conflicting factual versions, the conflict must be resolved by the trial judge. [Citations.]

■ "Where the trial court determines that the pretrial identification procedure was unfair, it is then incumbent upon the prosecution to establish that the in-court identification will have an origin independent of the pretrial identification, and if such independent origin is established, then

the identifying witness is not precluded from identifying the defendant in the courtroom. [Citations.] Contrawise, if the trial court decides that the pretrial identification procedures were fair, the identifying witness may identify the defendant in the courtroom without the necessity of a showing that courtroom identification has an origin independent of the pretrial procedures. [Citations.] In such case the defendant may still offer before the jury such evidence of unfairness as he can produce. Such evidence affects the weight rather than the admissibility of the identification. [Citations.]" (10 Cal.App.3d at pp. 30-31.)[6]

 Here the trial court followed the prescribed procedure. It is concluded that under the circumstances of this case the use of a single photograph was not so impermissibly suggestive as to taint, as a matter of law the witness' courtroom identification of the defendant. There was substantial evidence to support the trial court's finding to that effect (see fn. 4, *supra*). Under such circumstances the trial court's ruling is binding on appeal. (*People* v. *Guerin* (1972) 22 Cal.App.3d 775, 779 [99 Cal.Rptr. 573] [cert. den. (1972) 409 U.S. 859 (34 L.Ed.2d 105, 93 S.Ct. 145)]; *People* v. *Citrino, supra,* 11 Cal.App.3d 778, 783-784; *People* v. *Rodriquez, supra,* 10 Cal.App.3d 18, 30; *People* v. *Baxter* (1970) 7 Cal.App. 3d 579 584 [86 Cal.Rptr. 812]; *People* v. *Hawkins, supra,* 7 Cal.App.3d 117, 123; and *People* v. *Neal, supra,* 271 Cal.App.2d 826, 832.)

Moreover, the record supports a finding that Linda's courtroom identification of the defendant stemmed independently from her confrontation with him on June 30, 1971. In *Neil* v. *Biggers, supra,* the court stated, "We turn, then, to the central question, whether under the 'totality of the circumstances' the identification was reliable even though the confrontation

---

[6]In *People* v. *Citrino, supra,* the court suggested that the objection having been interposed, the burden shifts to the proponent of the evidence. It stated, "The questions for determination by the trial judge may be likened to those presented where the accused attacks the validity of an arrest or of a search and seizure. In such cases, as in the present case, the accused is asserting that the prosecution proceeded illegally in obtaining evidence which may lead to his conviction. That claim places upon the prosecution, as the proponent of the identification evidence, the burden of showing that the offered identification testimony is admissible. [Citations.] The trial court must determine, as a 'preliminary fact' within the meaning of Evidence Code section 402, whether the prosecution has shown, by a preponderance of the evidence, that the identification procedure employed was not in fact overly suggestive." (11 Cal.App. 3d at p. 783.) It is unnecessary to resolve the discrepancy between this statement as to the burden of proof with the statement in *People* v. *Rodriquez, supra.* It may be noted, however, that a search and seizure is prima facie invalid if there is no warrant, whereas there is no prohibition against pretrial photographic identification per se. The burden does shift, however, if the procedure employed is found to be suggestive. Both cases agree that the test on review is whether the trial court's resolution of the issue is supported by substantial evidence.

procedure was suggestive. As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime. the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." (409 U.S. at p. 199 [34 L.Ed.2d at p. 411]. See also *United States* v. *Wade* (1967) 388 U.S. 218, 241 [18 L.Ed.2d 1149, 1165, 87 S.Ct. 1926]; and *People* v. *Martin, supra,* 2 Cal.3d 822, 831-832.)

In the instant case the witness had an adequate opportunity to observe her assailant, her attention was directly focused on him and his actions. There is nothing in the record which indicates that the description she first gave was inconsistent with the physical features of the defendant whom the jury could observe in the courtroom. The witness' recognition of the person portrayed in the photograph was spontaneous and was not dictated by any suggestion that the subject would or should be the suspect, and the time of the viewing was so close to the attack as to indicate that the witness' perception, retention and recollection were fresh. As stated in *People* v. *Brown, supra,* "The overriding consideration here is that the record establishes without any doubt that Mrs. Webster's in-court identification of defendant was based solely on a source independent of any pretrial identification either by photograph or lineup. [Citations.]" (273 Cal.App.2d at p. 112. See also *Coleman* v. *Alabama, supra,* 399 U.S. 1, 5-6 [26 L.Ed.2d 387, 394-395]; *People* v. *Stuller* (1970) 10 Cal.App.3d 582, 598 [89 Cal. Rptr. 158, 41 A.L.R.3d 712] [cert. den. (1971) 401 U.S. 977 (28 L.Ed.2d 327, 91 S.Ct. 1205)]; *People* v. *Rodriquez, supra,* 10 Cal.App.3d 18, 32; *People* v. *Colgain, supra,* 276 Cal.App.2d 118, 129. Cf. *People* v. *Martin, supra,* 2 Cal.3d 822, 833-834; and *People* v. *Caruso, supra,* 68 Cal.2d 183, 189-190.)

There was no error in admitting Linda's testimony which identified the defendant in court as the person who accosted her.

### III

The jury was properly instructed on the elements of the offense of assault with intent to commit rape (see fn. 3 above). (*People* v. *Nye* (1951) 38 Cal.2d 34, 37 [237 P.2d 1]; *People* v. *Meichtry* (1951) 37 Cal.2d 385, 388-389 [231 P.2d 847]; *People* v. *Fleming* (1892) 94 Cal. 308, 311 [29 P. 647]; *People* v. *Cortez* (1970) 13 Cal.App.3d 317, 326 [91 Cal.Rptr. 660]; *People* v. *Elder, supra,* 274 Cal.App.2d 381, 398; *People* v. *Clifton*

(1967) 248 Cal.App.2d 126, 129 [56 Cal.Rptr. 74]; *People* v. *Peckham* (1965) 232 Cal.App.2d 163, 167 [42 Cal.Rptr. 673]; *People* v. *Roth* (1964) 228 Cal.App.2d 522, 532 [39 Cal.Rptr. 582]; *People* v. *Tidmore* (1963) 218 Cal.App.2d 716, 720 [32 Cal.Rptr. 444] [burglary]; and *People* v. *Mullen* (1941) 45 Cal.App.2d 297, 299-300 [114 P.2d 11].)

In *People* v. *Cortez, supra,* this court collated earlier cases as follows: " 'To support a conviction for . . . [assault with intent to commit rape], the prosecution must prove the assault and an intent on the part of the defendant to use whatever force is required to complete the sexual act against the will of the victim [Citations.] It is the state of mind of the defendant . . . which is in issue.' (*People* v. *Roth* (1964) 228 Cal.App. 2d 522, 532 . . . . See also, *People* v. *Nye* (1951) 38 Cal.2d 34, 37 . . .; *People* v. *Peckham* (1967) 249 Cal.App.2d 941, 944 . . .; *People* v. *Peckham* (1965) 232 Cal.App.2d 163, 167 . . .; *People* v. *Padilla* (1962) 210 Cal.App.2d 541, 543 . . .; and *People* v. *Mullen* (1941) 45 Cal.App.2d 297, 299-300 . . . .) It is not necessary to prove that the offender indicated a resolve to use all of his force to commit rape notwithstanding all possible resistance. (Cf. *People* v. *Mullen, supra,* 45 Cal.App. 2d at p. 301, with *People* v. *Hood* (1962) 199 Cal.App.2d 44, 46 . . . .) Nevertheless, a distinction is recognized between the intent to rape, and lewdness, indecency and lasciviousness either alone or accompanied by an intent to seduce. (Cf. *People* v. *Mullen, supra,* and *People* v. *Nye, supra,* 38 Cal.2d at p. 38.)" (13 Cal.App.3d at p. 326.)

It was also noted in connection with the parallel offense of burglary predicated upon an unlawful entry with intent to commit rape: "If the entry was effected with the intent 'to commit one or more misdemeanors (e.g., indecent exposure or battery) or acts which are not crimes (e.g., masturbation)' (*People* v. *Failla, supra,* 64 Cal.2d at p. 565), or with the intent to seduce the victim (*People* v. *Tidmore, supra,* 218 Cal.App.2d at p. 720), no burglary was committed." (*Id.* at p. 327.)

The jury in weighing the evidence concerning the nature of the offense against Terese found that there was no intent to rape, and convicted the defendant of simple assault. With respect to Linda the jury found the more serious offense. ▮ Defendant contends that his conviction on that count should be reversed, or at least be reduced to simple assault because there is insufficient evidence to sustain a finding that the defendant had the requisite intent to commit rape. He asserts that even if the prosecution's evidence is accepted at full value, the most that can be said is that the defendant had the intent to initiate sexual foreplay with the girl he accosted, that it is pure speculation to infer that the preliminary attentions manifested by themselves a desire for intercourse, and that it is wild specu-

lation to assume that the acts related by the victim manifested a desire for intercourse by force.

▉ In appraising these contentions the court is bound by established principles of appellate review, "A judgment will not be reversed unless upon no reasonable hypothesis whatsoever is there sufficient evidence to support the trier of fact's conclusion, and an appellate court will assume the existence of every fact in support of the judgment that can reasonably be deduced from the evidence. [Citations.]" (*People* v. *Bard* (1968) 70 Cal.2d 3, 4-5 [73 Cal.Rptr. 547, 447 P.2d 939].) The court further stated, ". . . it is not the function of this court to determine whether a different finding would be just as reasonable as the one the trial court made; rather, this court simply determines whether there is substantial evidence, including inferences reasonably deduced from the facts in evidence, to support the finding actually made." (*Id.*, p. 6. See also *People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321]; *People* v. *Bassett* (1968) 69 Cal.2d 122, 138 [70 Cal.Rptr. 193, 443 P.2d 777]; *People* v. *Hillery* (1965) 62 Cal.2d 692, 702-703 [44 Cal.Rptr. 30, 401 P.2d 382] [cert. den. (1967) 386 U.S. 938 (17 L.Ed.2d 810, 87 S.Ct. 958)]; *People* v. *Meichtry, supra,* 37 Cal.2d 385, 388-389; *People* v. *Fleming, supra,* 94 Cal. 308, 310; *People* v. *Clifton, supra,* 248 Cal.App.2d 126, 129; *People* v. *Tidmore, supra,* 218 Cal.App.2d 716, 720; and *People* v. *Woods* (1946) 75 Cal.App.2d 246, 248 [170 P.2d 477].) In *People* v. *Meichtry, supra,* the court opined: "The question whether the intent existed is one for the jury to determine from the conduct of the defendant and the surrounding circumstances. A determination by the court is permissible only when the facts afford no reasonable ground for an inference that the intent existed. [Citations.]" (37 Cal.2d at p. 389. See also *People* v. *Elder, supra,* 274 Cal.App.2d 381, 398; and *People* v. *Woods, supra,* 75 Cal.App.2d 246, 247.)

On the other hand the reviewing court has an obligation to determine whether there is *substantial* evidence to sustain the implied finding of the trier of fact. In *People* v. *Bassett, supra,* the court stated, ". . . our task in this regard is twofold. First, we must resolve the issue in the light of the *whole record*—i.e., the entire picture of the defendant put before the jury—and may not limit our appraisal to isolated bits of evidence selected by the respondent. Second, we must judge whether the evidence of each of the essential elements constituting the higher degree of the crime is *substantial;* it is not enough for the respondent simply to point to 'some' evidence supporting the finding, for 'Not every surface conflict of evidence remains substantial in the light of other facts.' (*People* v. *Holt, supra,* at p. 70 of 25 Cal.2d.) . . . [¶] '. . . It must be reasonable in nature, credi-

ble, and of solid value; it must actually be "substantial" proof of the essentials which the law requires in a particular case.' " (69 Cal.2d at pp. 138 and 139. See also *People* v. *Redmond, supra,* 71 Cal.2d 745, 755-756; *People* v. *Fleming, supra,* 94 Cal. 308, 313; *People* v. *Tidmore, supra,* 218 Cal.App.2d 716, 720; and *People* v. *Mullen, supra,* 45 Cal.App.2d 297, 301-302.)

■ With these precepts in mind, Linda's testimony concerning the defendant's actions may be reviewed. The defendant, who approached from the direction in which Linda was walking, put his arm around her waist and turned her around. She thought his conduct was unusual, and she was startled and afraid. Defendant spoke in a soft voice and said, "Don't be afraid. I have a gun. Don't move." The defendant was on her right with his left arm around her waist, and she felt something hard against her right side. She did not look down to see whether it was a gun and did not know whether it was his finger, or a piece of metal or wood. The defendant told her to be quiet. At his request she placed her right arm around his waist and they started walking in the opposite direction from which she had been headed. Linda asked the defendant, "What do you want?" or "Oh God, what do you want?" and he replied, "I just want to play with you." She also remonstrated, "Don't hurt me." As they walked slowly the defendant had a hold of Linda and moved his left hand up and down her waistline, a little bit, in a manner which she demonstrated to the jury. An objection was sustained to Linda's volunteered statement, "He just put his hand where he's not supposed to," and a question and answer indicating he did "other things." When defendant indicated that he was going to play with her, Linda attempted to get away and shook her head and said "No, no." The defendant told her to stop it and be quiet. Linda remained quiet and then broke from defendant's embrace without a struggle, screamed and ran to a friend's home. According to Linda she only walked with the defendant past a couple of houses, and the whole incident took no more than six or seven minutes.

Linda was attired in sandals, jeans and a short sleeve shirt covered by a zipped-up jacket, which reached down to her hips. So far as appears in the record the defendant did not attempt to disarrange her apparel. He was dressed in pants and shirt and an open jacket which reached to his hips and zipped up the front. He did not expose himself while Linda observed him, nor did he offer her any money. There were street lights on the street and lights on in houses in the residential neighborhood. Several cars, but no pedestrians, passed as they walked.

Linda testified that she had never been raped. Over the defendant's objection she was permitted to testify that she knew what the defendant

meant when he said, "I just want to play with you," that she was afraid, without knowing what she was afraid of. Subsequently she testified that she broke away and ran because she was afraid of the defendant, because she did not want to be with him, and because she was afraid she would probably be raped. She acknowledged that the defendant did not say "I'm going to rape you." She further testified that the statement "I want to play with you" when addressed to her as a 16-year-old girl by what appeared to be an 18- or 19-year-old youth, did not indicate to her "hugging or kissing" but it did indicate "possible rape." The foregoing testimony may reflect the feelings of the victim, but her conduct and intentions can only be material insofar as they are manifested to the accused and throw light on his acts and intent. "It is the state of mind of the defendant, not of the victim, which is in issue." *(People v. Roth, supra,* 228 Cal.App.2d 522, 532.)* Her unexpressed subjective evaluation of the situation cannot make an assault with intent to commit rape out of a simple touching which objectively can only be attributed to attempted seduction, or an attempt to secure the satisfaction of some unnatural or abnormal sexual interest, short of actual sexual intercourse.

In *People* v. *Mullen, supra,* the opinion recites, "The fact that the defendant may have been guilty of lewdness, indecency and even of lasciviousness would not be sufficient to warrant the finding that he was guilty of an assault with intent to commit rape."[7] (45 Cal.App.2d at p. 301. See also *People* v. *Failla* (1966) 64 Cal.2d 560, 564-565 [51 Cal.Rptr. 103, 414 P.2d 39]; *People* v. *Fleming, supra,* 94 Cal. 308, 311-313; and *People* v. *Tidmore, supra,* 218 Cal.App.2d 716, 720.) The testimony of Linda when considered alone falls short of furnishing substantial evidence that the defendant assaulted her with intent to commit rape. A comparison of the

[7]A further statement reading, "Before such a finding can be justified, it must appear beyond a reasonable doubt that the acts of the defendant were such as to indicate clearly a felonious intent to ravish the woman notwithstanding her most violent resistance." (45 Cal.App.2d at p. 301), has been persistently criticized. In *People* v. *Hood* (1962) 199 Cal.App.2d 44 [18 Cal.Rptr. 351], the court noted: "Moreover, to the extent that the latter case [*People* v. *Mullen*] impels proof that the offender must indicate a resolve to use all of his force to commit rape notwithstanding all possible resistance it is no longer followed. (*People* v. *House* (1958) 157 Cal.App.2d 151, 155-156 . . . .)" (199 Cal.App.2d at p. 46. In addition to *People* v. *House,* see, *People* v. *Bard, supra,* 70 Cal.2d 3, fn. 1, p. 7; *People* v. *Nye, supra,* 38 Cal.2d 34, 38; *People* v. *Nelson* (1955) 131 Cal.App.2d 571, 574 [281 P.2d 8]; *People* v. *Stewart* (1952) 109 Cal.App.2d 334, 344 [240 P.2d 704]; *People* v. *Cassandras* (1948) 83 Cal.App.2d 272, 277 [188 P.2d 546] [overruled on other grounds *People* v. *Collins* (1960) 54 Cal.2d 57, 60 [4 Cal.Rptr. 158, 351 P.2d 326]]; *People* v. *Schmidt* (1944) 66 Cal.App.2d 253, 257 [152 P.2d 1021]; and *People* v. *Bumbaugh* (1941) 48 Cal.App.2d 791, 796 [120 P.2d 703] [disapproved on other grounds *People* v. *Carmen* (1951) 36 Cal.2d 768, 775-776 [228 P.2d 281]].)

facts to which she testified with those in the cases cited above and in the last footnote reveals the glaring disparity.[8] In the light of "American Graffiti" (a Lucas Film, Ltd./Coppola Co. Production, technicolor film released by Universal Pictures 1973), a sizeable portion of the youth of this state would be subject to prosecution and imprisonment for from 1 to 20 years if convictions could be obtained for violation of Penal Code section 220 on such flimsy evidence.

Nor is the conviction sustained by other evidence in the record. The jury correctly, for reasons outlined above, refused to convict defendant of more than simple assault against Terese. His acts on that occasion, June 4, could not impart greater meaning to similar acts on June 30. The incidents with Miss K. furnish some support for a finding that the sexual gratification the defendant sought with Linda was sexual intercourse. On the first occasion with Miss K. he allegedly said that he desired sexual intercourse. No such intention was expressed the second time, but on the third and fourth occasions he wanted to purchase her favors. There is lacking, however, any persistent display of force. Although he grabbed

[8]For example: "By climbing into the victim's bed, thrusting his hand beneath her underwear, and fondling her private parts, defendant assaulted her . . . ; and there would appear to be no reason why a potential rapist must exceed this degree of unwarranted physical contact before it can be said he intended to take his victim against her will." (*People* v. *Bard, supra,* 70 Cal.2d at p. 6. See also *People* v. *Elder, supra,* 274 Cal.App.2d at pp. 399-400.)

"When a strange man enters a woman's bedroom, covers her mouth with his hand, grasps her wrist while she screams and kicks, releases her when she bites his hand, and makes no effort to take any property, it is reasonable to infer that he intended to commit rape, particularly when such an intent is shown by his attempt to rape another woman under similar circumstances." (*People* v. *Nye, supra,* 38 Cal.2d at p. 37.)

"The two were strangers. The defendant committed an aggravated assault upon the young girl, who wore only a two-piece bathing suit at the time. When he was interrupted in the course of his attack, he ran away, thus indicating consciousness of the commission of an offense; evidence which will be specified more fully in a later part of this opinion indicated that he was obsessed with a desire for sexual intercourse on the afternoon in question." (*People* v. *Clifton, supra,* 248 Cal.App.2d at p. 130.)

"Appellant's statement that he wanted the victim and that he had come to rape her in broad daylight were sufficient to establish his intent to rape." (*People* v. *Peckham, supra,* 232 Cal.App.2d at p. 168.)

"In the early morning hours of August 27, 1945, the complainant was 'running down the street from taking my girl friend home. . . . All at once I heard a fast click of heels behind me, and I was grabbed from behind' and turned around. 'Well, I said "No." And he said "yes." And then he hit me in the eye and threw me down. . . . Then he was on top of me, and he told me if I screamed once more he'd cut me to pieces.' Several times defendant reached for his pocket, pulled the complainant's dress up and made remarks, from which the trial court was justified in drawing an inference that the assault was with intent to commit rape." (*People* v. *Woods, supra,* 75 Cal.App.2d at p. 247.)

her twice on the first occasion, it appears that he was attempting to hold her attention. His request, "Well, can't we get a quick one before we go home?" indicates a request rather than a demand. When she retaliated to his grabbing her he backed off and ran away.

Miss K's terse account of the third occasion reflects that defendant pushed her in the bushes after offering her $100 to have sexual intercourse. From all that appears he pushed her in the bushes because of pique because of her refusal. On the fourth occasion he again suggested that his victim prostitute herself. His subsequent use of force again did not rise to that necessary to accomplish his purpose, and was limited to that necessary to hold her attention.

The circumstances fail to rise to the dignity of showing intent to overcome his victim's resistence by force or violence. They do not measure up to the facts in the cases which have been reviewed above. (Cf. fn. 8 above and accompanying text.) Moreover, even if those occurrences were admissible to show the defendant's sexual motivation, as has been held above (part I), the failure of defendant to exhibit his private parts or offer money on the occasion in question renders the prior offenses of little if any persuasive value on the issue of the intent to commit sexual intercourse, as distinguished from lascivious acts, on the subsequent occasions. As noted above, they are of no persuasive value on the issue of intent to use force.

It is, therefore, concluded that there is no substantial evidence to support the jury's implied finding of the requisite intent with respect to Linda. In this case it cannot be said that if the defendant was guilty at all he was guilty of the aggravated assault. (Cf. *People* v. *Wells* (1970) 13 Cal. App.3d 265, 277 [91 Cal.Rptr. 460]; *People* v. *Roth, supra,* 228 Cal. App.2d 522, 531-532; and note *People* v. *Meichtry, supra,* 37 Cal.2d 385, 390.) The trial court properly gave the instruction on simple assault as a lesser included offense, and the jury's verdict implies guilt of that offense which is supported by the evidence.

Section 1181 of the Penal Code provides in pertinent part, "6. When the verdict . . . is contrary to law or evidence [the court may grant a new trial], but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty . . . of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed; . . ." (See also Pen. Code, § 1260; *People* v. *Bassett, supra,* 69 Cal.2d 122, 125 and 137-138; and *People* v. *Romo* (1967) 256 Cal.App.2d 589, 595-597 [64

Cal.Rptr. 151].) It is, therefore, appropriate to modify the conviction on the third count to simple assault in violation of section 240 of the Penal Code.

## IV

Defendant asserts that he cannot be convicted of child molestation and assault for one course of action against the same victim at one time. Section 654 of the Penal Code provides in part, "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ." Under this clause, the defendant cannot be sentenced for two offenses against each victim. Since the felony charge under section 647a carries a punishment of imprisonment in the state prison for not less than one year, and a simple assault is punishable by imprisonment in the county jail not exceeding six months, the defendant should only be sentenced under counts one and three, and any punishment under the second and fourth counts of necessity must be suspended. (See *People* v. *Bauer* (1969) 1 Cal.3d 368, 375-377 [82 Cal. Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398] [cert. den. (1970) 400 U.S. 927 (27 L.Ed.2d 187, 91 S.Ct. 190)]; *In re Pratt* (1967) 66 Cal.2d 154, 156-157 [56 Cal.Rptr. 895, 424 P.2d 335] [mod. (1971) 5 Cal.3d 46 (95 Cal.Rptr. 11, 484 P.2d 1355)]; *People* v. *Lyons* (1971) 18 Cal.App.3d 760, 780-781 [96 Cal.Rptr. 76]; *People* v. *Wells, supra,* 13 Cal.App.3d 265, 277; *People* v. *Batres* (1969) 269 Cal.App.2d 900, 904 [75 Cal. Rptr. 397]; *People* v. *Roth, supra,* 228 Cal.App.2d 522, 534-535.)

The first clause of section 654 is only aimed against double punishment. It does not prevent double convictions. (See *People* v. *Bauer, supra,* 1 Cal.3d 368, 375; *In re Pratt, supra,* 66 Cal.2d 154, 156; *People* v. *Lyons, supra,* 18 Cal.App.3d 760, 780; and *People* v. *Stevenson* (1969) 275 Cal. App.2d 645, 650 [80 Cal.Rptr. 392] [cert. den. (1970) 397 U.S. 1014 (25 L.Ed.2d 428, 90 S.Ct. 1247)].) When, however, one offense charged is necessarily included in another, double conviction is also prohibited. (See *People* v. *Bauer, supra,* 1 Cal.3d 368, 375; *People* v. *Greer* (1947) 30 Cal.2d 589, 604 [184 P.2d 512]; *People* v. *Cline* (1969) 2 Cal.App.3d 989, 996-997 [83 Cal.Rptr. 246]; *People* v. *Toliver* (1969) 270 Cal.App. 2d 492, 497-498 [75 Cal.Rptr. 819] [cert. den. (1969) 396 U.S. 895 (24 L.Ed.2d 172, 90 S.Ct. 192)]; and *People* v. *Pater* (1968) 267 Cal.App.2d 921, 924-926 [73 Cal.Rptr. 823].)

The offense proscribed by section 647a can be committed by "a lewd and obscene act either in front of the child or with the child." (See *People*

v. *Carskaddon, supra,* 49 Cal.2d 423, 426.) Simple assault in violation of section 240 of the Penal Code is therefore not a lesser included offense of the crime of annoying or molesting a child, in violation of section 647a. Nor can the latter offense be an included offense of simple assault. As noted above, a violation of section 647a requires proof of a certain mental state on the part of the perpetrator. There is, therefore, no reason to strike the conviction of assault in this case.

Defendant relies upon the next ensuing clause of section 654 which reads: ". . . an acquittal or conviction and sentence under either one [of several "different provisions of this code" under which "an act or omission . . . is made punishable"] bars a prosecution for the same act or omission under any other." Under the provisions of section 954 of the Penal Code which regulate joinder of charges ". . . the defendant may be convicted of any number of the offenses charged, and each offense of which the defendant is convicted must be stated in the verdict or the finding of the court; . . ." (See *Kellett* v. *Superior Court* (1966) 63 Cal.2d 822, 824-826 [48 Cal.Rptr. 366, 409 P.2d 206]; and *People* v. *Nye, supra,* 38 Cal.2d 34, 39.) Unless the offenses are included offenses within the principle outlined above, several convictions, although not necessarily several punishments, may result in one action. The second clause does, however, serve to protect the accused from successive prosecutions for the same act or omission. (See *Kellett* v. *Superior Court, supra,* 63 Cal.2d 822, 827-828; and *In re Benny G.* (1972) 24 Cal.App.3d 371, 374-377 [101 Cal.Rptr. 28].)

 Although defendant is entitled to protection against double punishment, the time is not ripe for him to assert that claim. "A person committed as a mentally disordered sex offender is not confined for the criminal offense but because of his status as a mentally disordered sex offender." [Citations.]" (*In re Bevill* (1968) 68 Cal.2d 854, 858 [69 Cal.Rptr. 599, 442 P.2d 679]. See also *People* v. *Batres, supra,* 269 Cal.App.2d 900, 904; and *People* v. *Loignon* (1967) 250 Cal.App.2d 386, 389 [58 Cal. Rptr. 866].) Defendant, therefore, has not been subjected to double punishment. In *People* v. *Stevenson, supra,* 275 Cal.App.2d 645, the court disposed of a similar claim by a defendant committed to the Youth Authority as follows: "In the case before us, the certification to the Youth Authority was made before any sentence was pronounced; . . . It would be presumptuous for us to assume that if defendant is ever returned in accordance with Welfare and Institutions Code section 1737.1 the court will pronounce sentence other than in accordance with the provisions of Penal Code section 654." (275 Cal.App.2d at pp. 651 and 652.) Defendant is not entitled to sentencing relief at this time.

*In re Bevill, supra,* stated, "Since the efficacy of his commitment was undermined by the deficiency of his conviction, a writ of habeas corpus must be granted ordering his discharge." (68 Cal.2d at p. 863.) In that case the court found the defendant was convicted under a statute which did not prohibit his conduct. (*Id.*) In this case the defendant was properly convicted of two offenses involving sexual misconduct. The fact that a third charge is to be reduced does not appear to affect the validity of his commitments which are based on his conduct and upon the results of psychiatric examinations, irrespective of the penal consequences of those acts. There is, therefore, no reason to upset the commitment in the criminal action (No. 51641) because one conviction is modified. As noted above there is no attack on the commitment in the second action (No. 51691).

The conviction of assault with intent to commit rape in violation of section 220 of the Penal Code is modified to simple assault in violation of section 240 of the Penal Code, and, as so modified, the convictions in action No. 51641, and the orders of commitment in actions No. 51641 and No. 51691 are affirmed.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied November 9, 1973, and appellant's petition for a hearing by the Supreme Court was denied December 27, 1973.