[No. D055704. Fourth Dist., Div. One. Mar. 7, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
ARTURO SERGIO RODRIGUEZ, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part III.A. and B.

COUNSEL

Sachi Wilson, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Felicity Ann Senoski, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

AARON, J.—

## I.

## INTRODUCTION

The People charged Arturo Sergio Rodriguez and codefendant Carlos Nicolas Covarrubias with three counts of attempted murder (Pen. Code, §§ 664, 187, subd. (a))[1] (counts 1, 3, and 5), and five counts of assault with a deadly weapon or force likely to produce great bodily injury (§ 245, subd. (a)(1)) (counts 2, 4, 6, 7, and 8).[2] With respect to each count and each defendant, the People alleged a gang sentence enhancement (§ 186.22, subd. (b)(1)). As to counts 1, 3, and 5, the People alleged that Rodriguez personally used a dangerous and deadly weapon within the meaning of section 12022, subdivision (b)(1). As to counts 2, 4, 6, 7, and 8, the People alleged that Rodriguez personally used a dangerous and deadly weapon within the meaning of section 1192.7, subdivision (c)(23). The People also alleged that Rodriguez had suffered a prison prior (§§ 667.5, subd. (b), 668), a serious felony prior (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)), and a strike prior (§§ 667, subd. (b), 668, 1170.12) in connection with an August 2000 conviction.

A jury found Rodriguez guilty of counts 2, 4, 6, and 8. The jury found Rodriguez not guilty of the charged offense in count 7 (§ 245, subd. (a)(1)), but guilty of the lesser offense of simple battery (§ 242) as to that count. With respect to count 8, the jury found that Rodriguez personally used a dangerous and deadly weapon within the meaning of section 1192.7, subdivision (c)(23). The jury was unable to reach a verdict on the remainder of the counts and allegations. The trial court declared a mistrial as to counts 1, 3, and 5, and

---

[1] Unless otherwise specified, all subsequent statutory references are to the Penal Code.

[2] Covarrubias is not a party to this appeal.

later dismissed those counts and the balance of the allegations, pursuant to the prosecutor's motion. After the jury returned its verdicts, Rodriguez admitted having suffered the prior conviction. The trial court sentenced Rodriguez to an aggregate sentence of 13 years in prison.

On appeal, Rodriguez claims that the trial court erred in admitting expert testimony pertaining to gangs in general, and in particular, in admitting expert testimony concerning the attitudes of gang members toward "snitches." In addition, Rodriguez contends that the court erred in denying his motion to bifurcate trial of the substantive crimes from the gang enhancement allegations.

We conclude that Rodriguez has forfeited his evidentiary claims by failing to make adequate objections in the trial court and/or by failing to present an adequate argument on appeal. We further conclude that the trial court did not abuse its discretion in denying Rodriguez's motion to bifurcate.

■ Rodriguez also requests that this court independently review the transcript and the records that the trial court reviewed at its in camera *Pitchess*[3] hearing, to determine whether the trial court properly denied his motion for discovery of a police detective's personnel file. As is frequently the case in this court, appellate counsel has failed to ensure that the *Pitchess* materials are part of the record on appeal. While we have exercised our discretion to order the record on appeal augmented to include the *Pitchess* materials, we publish a portion of this opinion to remind appellate counsel that it is counsel's responsibility to ensure that the record is perfected in cases in which a *Pitchess* claim is raised. On the merits, we conclude the trial court did not err in determining that there were no discoverable materials in the detective's personnel file.

## II.

## FACTUAL BACKGROUND

A. *The June 21, 2008 assaults*

On June 21, 2008, Marco Hernandez was attending a party in a neighborhood in southeast San Diego known as Shelltown. Hernandez was working on a car with a few other people outside the residence at which the party was being held. Covarrubias, who had nearly gotten into a fight with Hernandez at

---

[3] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (*Pitchess*).

a liquor store the previous day, rode by the residence on a bicycle. Covarrubias was accompanied by two other men, who were also riding bicycles. According to the testimony of San Diego Police Officer Mike Hall, one of the men who was working on the car with Hernandez said that Covarrubias and the other men "mad-dogged" Hernandez and his friends by giving them "dirty looks."

Approximately 10 minutes later, Covarrubias returned with a group of about 10 others, including Rodriguez. Rodriguez was armed with a two-by-four piece of wood, and others in the group had knives. Covarrubias challenged Hernandez to a fight. Some members of Covarrubias's group yelled out "38th Street" and "Shelltown 38," and Covarrubias and Hernandez began to fight (count 7).

While Covarrubias and Hernandez were fighting, several of the partygoers came outside the residence. A large melee ensued. George Arciniega was stabbed multiple times (count 2); Jorge Martinez was stabbed three times (count 4); Javier Martinez was punched and stabbed (count 6); and Jacinto Martinez was hit in the head with a piece of wood by a person who a witness described as having "1920" tattooed across his neck (count 8). Rodriguez has such a tattoo. After the stabbings, Covarrubias's group ran from the scene.

B.   *Gang-related evidence*

San Diego Police Detective Greg Pinarelli testified as a gang expert at trial. Pinarelli recounted the history of the Shelltown 38 gang, and stated that the attack occurred on the gang's turf. Detective Pinarelli described several prior crimes that Shelltown 38 members had committed, for the purpose of proving the existence of the gang.

Detective Pinarelli also testified concerning gang culture, including gang members' unwillingness to cooperate with law enforcement, and their willingness to use violence against those who do. Detective Pinarelli testified that gang members achieve status within their gangs by committing crimes on behalf of the gang. In addition, fellow gang members are expected to provide assistance if another member of their gang is involved in an assault. Detective Pinarelli also stated that gangs commit violent acts in order to instill fear in the community, and to boost their status among rival gangs.

Rodriguez is a documented member of the Shelltown 38 gang. In prior contacts with police, Rodriguez admitted his affiliation with Shelltown 38. Rodriguez also has tattoos that reflect his affiliation with the gang, including the number "1920" on his neck. That number represents the 19th letter of the alphabet, "S," and the 20th letter, "T," which is an abbreviation for Shelltown.

## III.

## DISCUSSION

A., B*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

C. *The trial court did not abuse its discretion in denying Rodriguez discovery of Detective Pinarelli's records*

Rodriguez requests that this court conduct a review of Detective Pinarelli's sealed personnel file to determine if the file contains discoverable materials.

### 1. *Factual and procedural background*

In the trial court, Rodriguez filed a motion pursuant to *Pitchess, supra*, 11 Cal.3d 531, in which he sought discovery of Detective Pinarelli's personnel records. In his motion, Rodriguez argued that Detective Pinarelli may have "tainted" two eyewitness identifications of Rodriguez "in order to strengthen his case against Mr. Rodriguez." Rodriguez claimed that Detective Pinarelli harbored a "grudge" against him based on prior contacts between the two men. The trial court conducted a hearing on the motion. During the hearing, the court concluded that it would review the personnel records in camera "as to evidence of police misconduct along the lines of coercing witnesses to change testimony or something similar." After reviewing Detective Pinarelli's personnel records in camera, the court determined that there were no records that were discoverable.

### 2. *Governing law*

#### a. *Discovery of a police officer's personnel records*

In *People v. Gaines* (2009) 46 Cal.4th 172, 179 [92 Cal.Rptr.3d 627, 205 P.3d 1074], the Supreme Court summarized the manner by which a party may discover evidence in confidential police officer personnel records under *Pitchess* and its progeny: "[O]n a showing of good cause, a criminal defendant is entitled to discovery of relevant documents or information in the confidential personnel records of a peace officer accused of misconduct against the defendant. [Citation.] Good cause for discovery exists when the defendant shows both ' "materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information

---

*See footnote, *ante*, page 360.

sought.' [Citation.] A showing of good cause is measured by 'relatively relaxed standards' that serve to 'insure the production' for trial court review of 'all potentially relevant documents.' [Citation.] If the defendant establishes good cause, the court must review the requested records in camera to determine what information, if any, should be disclosed. [Citation.] Subject to certain statutory exceptions and limitations [citations], 'the trial court should then disclose to the defendant "such information [that] is relevant to the subject matter involved in the pending litigation." ' [Citations.]"

On appeal, this court is required to review the "record of the documents examined by the trial court" and determine whether the trial court abused its discretion in refusing to disclose the contents of the officer's personnel records. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229 [114 Cal.Rptr.2d 482, 36 P.3d 21]; see also *People v. Hughes* (2002) 27 Cal.4th 287, 330 [116 Cal.Rptr.2d 401, 39 P.3d 432].)

      b.  *Appellate counsel has a responsibility to ensure that the record is perfected in cases in which a* Pitchess *claim is raised*

█ The sealed transcript of a *Pitchess* hearing and any personnel documents that the trial court reviewed pursuant to a *Pitchess* motion are not part of the normal appellate record. (Cal. Rules of Court, rule 8.320.) Therefore, to the extent that an appellant's claim is dependent upon appellate review of the sealed transcript and the confidential personnel documents, appellate counsel is required to apply to the superior court for an order that the record include such materials, pursuant to California Rules of Court, rule 8.328(c). In the absence of such an application, the record on appeal will not contain the *Pitchess* materials, making it impossible for this court to review an appellant's *Pitchess* claim.

This court has exercised its discretion in this case—as it has had to do in many other cases—to augment the record to include the relevant *Pitchess* materials, in order to be able to address the issue. However, the failure of counsel to perfect the record delays the processing of cases and wastes judicial resources. Accordingly, we urge appellate counsel to ensure that the record is properly perfected in cases in which a *Pitchess* claim is raised.

      3.  *The trial court did not abuse its discretion in denying Rodriguez discovery of Detective Pinarelli's personnel file*

We have examined Detective Pinarelli's personnel records in camera and conclude that the trial court did not abuse its discretion in denying discovery of the records.

## IV.

## DISPOSITION

The judgment is affirmed.

Benke, Acting P. J., and O'Rourke, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 15, 2011, S192149.