Filed 12/10/25  P. v. Littlejohn CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MAURICE DWIGHT LITTLEJOHN,<br><br>    Defendant and Appellant. | D084361, D084550<br><br><br>(Super. Ct. Nos. SCD295372, SCE413231) |

CONSOLIDATED APPEALS from a judgment of the Superior Court of San Diego County, Eugenia Eyherabide, Judge.  Affirmed.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel Rogers and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Maurice Dwight Littlejohn of, among others, one count of assault with the intent to commit rape in the course of a first degree burglary (Pen. Code, § 220, subd. (b); count 1) and three counts of lewd acts

upon a child of 14 or 15 years of age (§ 288(c)(1); counts 6-8). On appeal, Littlejohn raises four challenges to his conviction.

First, Littlejohn claims the trial court erroneously admitted evidence of an uncharged sexual offense under Evidence Code section 1108. We conclude Littlejohn forfeited his claim the conduct was not a qualifying "sexual offense" by failing to object on that basis in the trial court. Further, the trial court did not err in concluding the evidence's probative value was not substantially outweighed by concerns of undue prejudice, excessive consumption of time, or juror confusion.

Second, Littlejohn contends insufficient evidence of intent existed to support his convictions for lewd acts upon a child of 14 or 15 years of age. Yet we conclude—particularly in light of the jury's instruction that it could use the charged sexual offenses as section 1108 evidence as to each other— the record contains substantial evidence of Littlejohn's specific intent to gratify his own sexual desires on all three occasions.

Third, Littlejohn contests the sufficiency of the evidence of his intent to commit rape, a required element of assault with the intent to commit rape in the course of first degree burglary. We conclude the totality of the circumstances establishes Littlejohn formed the requisite intent.

Finally, Littlejohn asks us to review the sealed transcript of the trial court's in camera review of records related to his motion brought under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531. We have reviewed both the reporter's transcript of the in camera proceedings as well as the underlying documents and conclude the trial court did not abuse its discretion in denying discovery of law enforcement officers' personnel and internal affairs files.

Accordingly, we affirm.

2

## I.

Around February 2021, Littlejohn—then 42 years old—began spending the night at his now-fiancée Cynthia S.'s apartment. Cynthia's then-14-year-old daughter, M.K., lived with them and had her own bedroom. Cynthia's friend J.N. lived in another unit in the same complex.

### A.

### 1.

In February 2021, M.K.'s female cousin, who was in her mid-twenties, was also living in the apartment and sleeping in M.K.'s room. According to the cousin, at 2:00 or 3:00 in the morning, while she and M.K. were asleep in the same bed, she woke up after feeling pressure on the bed. She saw Littlejohn in the bed on top of the covers looking at her and M.K., and she began kicking. Littlejohn looked taken aback, laughed, and left the room.

M.K. testified similarly about the incident.

### 2.

One morning in August 2021, after M.K. had turned 15 years old, M.K. opened her bedroom door to go to the kitchen. Littlejohn was standing in the hallway outside her room, staring at a wall. M.K. said, "'Excuse me,'" but he did not move.

Littlejohn's position and a laundry basket next to the door left little room for M.K. to exit, so she turned to her side to walk between them. As M.K. passed Littlejohn with her back facing him, she "felt pressure on [her] butt." She could tell it was the back of his hand but at that time thought it was an accident.

When M.K. returned a few minutes later, Littlejohn remained in the same spot. She positioned herself in the same way to move past him, and

"[h]e did the same thing, but with more pressure" against her bottom. Littlejohn did not move his hand while touching her.

M.K. told Littlejohn he was "weird" and asked what he was doing, but he did not respond and simply stared at her.

3.

At around 3:00 a.m. one morning in October 2021, M.K. was sleeping in her room when she awoke to the sensation of someone sitting down on the foot of her bed. She saw Littlejohn staring straight ahead—not at her— mumbling to himself.

M.K., who was wearing just a shirt and underwear, stood up in her bed to leave the room. Littlejohn "tried to say something" unintelligible to M.K., looked at her, and reached out and touched M.K.'s vaginal area. While touching her vaginal area, Littlejohn clearly said, "'With all that pussy.'" Littlejohn's hand went under M.K.'s shirt but over her underwear for "only a few seconds" before M.K. moved away. According to M.K., "it really seemed like he was trying to get under [her] underwear," although he did not move it. While he was touching M.K., Littlejohn's palm was face-up, and he curled his index and middle fingers.

M.K. left the room to tell her mother Cynthia to come get Littlejohn. Littlejohn left the room with Cynthia.

B.

1.

According to J.N., the afternoon of July 7, 2022, she was lying down in her bed watching television while her daughter played outside. Her daughter came inside to use the bathroom and left the apartment's front door cracked open when she exited. J.N. dozed off and awoke to her daughter saying

4

Littlejohn was there.  J.N. turned and saw him "standing over [her] bed."  Her daughter left the bedroom.

Littlejohn had previously come by J.N.'s apartment twice, briefly, without Cynthia.  But J.N. was shocked to see him this time and asked, "'What are you doing?'" and "'Where's Cynthia?'"  Littlejohn "came up to [J.N.] and he started saying . . . 'you know what's up.  Come on.  You know what's up.'"  J.N. asked what he was talking about, but he kept repeating the same thing as he "caress[ed]" her leg from the ankle up to her thigh.

J.N. told Littlejohn, "'You need to get out of here.  You're trippin','" and jumped off the bed.  Littlejohn stood "real close" to J.N. and kept repeating "come on."  Then he used his arm to turn J.N. around by her shoulder and "tried to bend [her] over on [her] mattress" by pushing her upper back with one hand.

J.N. caught herself on the bed and pushed herself back up.  She again told Littlejohn, "'You're trippin'.  You need to get out of here,'" but he tried to bend her over on the mattress yet again.  J.N. once more caught herself; when she stood back up, "he was just smiling, smirking."

Telling Littlejohn he "'need[ed] to get out of here,'" J.N. grabbed his hand to walk him out of her room.  While she did so, Littlejohn "caress[ed J.N.'s] butt" and "sideswiped [her] boob" with another "caress" with his free hand.  Littlejohn allowed J.N. to "walk him out," but he pulled out of her grasp as she was about to open the front door to her apartment and sat down in a chair.

J.N. felt "scared."  She offered Littlejohn some food to take back to Cynthia as a way to get him to leave.  Littlejohn took the food but remained seated in her apartment.  He was mumbling to himself but then said clearly

5

that "he was going to get married to Cynthia" and that he knew J.N. was married but she "needed some good dick."

J.N., who was standing by the open front door, saw her daughter outside playing. She asked her daughter to go to another apartment in the complex to get a male neighbor to come over.

The neighbor eventually came, and J.N. asked him to try to remove Littlejohn while she went over to talk to Cynthia. J.N. told Cynthia that Littlejohn was "'trippin'" and "'trying to sleep with'" her.

When J.N. left Cynthia's apartment, she saw Littlejohn walking back to Cynthia's apartment. She returned to her own.

2.

After calling her husband, J.N. noticed Littlejohn's cell phone on the foot of her bed. After Cynthia called her about the cell phone, J.N. took it down to the parking lot, where Cynthia and Littlejohn were in Littlejohn's car.

J.N. handed Littlejohn the cell phone and told him what he did was "'messed up.'" Cynthia grabbed a "long stick" and began "whacking [Littlejohn] with it" and "beating the car windshield." J.N. started walking away, and Littlejohn followed, asking to use her car.

As J.N. began climbing the stairs to her apartment, Littlejohn "grabbed" her bottom "really hard." J.N. turned around, pushed Littlejohn, and asked him, "'What are you doing?'"

J.N. began walking up the stairs again but had to turn around to pick up her slipper that had come off. Littlejohn grabbed J.N.'s vaginal area and said, "'All that pussy.'"

A neighbor asked if J.N. needed her to call law enforcement, and J.N. responded, "'Yes.'" When she got back to her apartment, J.N. also called 911.

3.

Police officers responded to a call for a sexual assault in progress with the alleged perpetrator armed with a cane.  One officer told Littlejohn to drop the cane, but Littlejohn instead approached the officer with the cane still in hand.

Once Littlejohn dropped the cane, an officer told him to turn around so he could handcuff him.  Littlejohn, however, took a fighting stance and pulled out a knife.  The officer deployed his taser, but Littlejohn removed the prongs, got up from the ground, and ran.

Littlejohn dropped the knife but took out his cell phone and pointed it at the officers, saying "either 'bang bang' or 'boom boom,'" "imitating . . . a firearm."  An officer who thought Littlejohn had a gun fired several shots at Littlejohn, which failed to strike him.

At some point, an officer effectively tased Littlejohn.  Littlejohn tried to punch one of the officers, who took him to the ground.  The officers restrained and handcuffed Littlejohn using force while he continued to resist.

C.

The operative second amended information charged Littlejohn with the following offenses (all felonies unless otherwise indicated): assault during first degree burglary with the intent to commit rape (Pen. Code, § 220(b); count 1); two misdemeanor counts of sexual battery (§ 243.4(e)(1); counts 2 & 3); exhibiting a deadly weapon to a police officer with the intent to resist and prevent arrest (§ 417.8; count 4); resisting an executive officer by use of force and violence (§ 69; count 5); and three counts of lewd acts upon a child of 14 or 15 years of age (§ 288(c)(1); counts 6-8).  Several allegations, prior offenses, and aggravating circumstances were also pled.

7

The above evidence was admitted at trial. As further detailed below, the court admitted the evidence of the February 2021 incident involving M.K. and her cousin over Littlejohn's objection. The court also instructed the jury it could use the charged sexual offenses as propensity evidence as to the other charged offenses under Evidence Code section 1108.

A criminalist testified that she analyzed DNA from swabs of J.N.'s leggings, shirt, and bra and compared the results to a reference sample from Littlejohn. Several of the results were inconclusive and some excluded Littlejohn as a contributor. There was strong support Littlejohn was a contributor to samples taken from above the knee of J.N.'s leggings and the back of her shirt. The criminalist explained it was possible to touch an item of clothing, even "rigorous[ly]," and not find DNA on the item.

A forensic toxicologist testified that a sample of Littlejohn's blood from the day of his arrest tested positive for PCP and methamphetamine. The level of methamphetamine was "a higher number than what we see on average," while the PCP level was "somewhat frequent." She testified both methamphetamine and PCP can cause "violent [and] aggressive behaviors" and methamphetamine "is known to increase libido or sex drive." But a person under the influence of either drug is capable of engaging in "goal-oriented behavior"—"making a decision and acting on that decision."

Littlejohn testified on his own behalf. He testified to using PCP, methamphetamine, and marijuana during the relevant timeframe but claimed he was "functional" while "on drugs."

Littlejohn denied ever touching M.K. "in a sexual way" and called her testimony a "[t]otal lie." He also denied ever getting into bed with M.K. and her cousin.

8

Regarding J.N., Littlejohn claimed J.N.'s daughter let him into the apartment so he could ask for gas money. He said "[n]othing physical happened" aside from a "partial hug." He admitted to having "smoked something" before the encounter but agreed he was "in control."

A defense psychological consultant testified he had diagnosed Littlejohn with post-traumatic stress disorder, which can result in extreme or exaggerated reactions that can be made "worse" by drug use.

Ultimately, the jury convicted Littlejohn of all charged counts and found true all related allegations. Littlejohn admitted the prior convictions as well as four allegations that he served prior prison terms (Cal. Rules of Court, rule 4.421(b)(3)).

### D.

Several months before the trial described above in case number SCD295372, Littlejohn was convicted in case number SCE413231 of attempted murder (Pen. Code, §§ 664, 187(a); count 1) and assault with a deadly weapon (§ 245(a)(1); count 2). We affirmed the judgment of conviction in an unpublished opinion. (*People v. Littlejohn* (Dec. 6, 2024, D082357) [nonpub. opn.], review den. Feb. 19, 2025.)

When Littlejohn was sentenced in case number SCE413231, the court stayed punishment on count 2 under section 654 and sentenced Littlejohn to a cumulative prison term of 23 years on count 1 consisting of the middle term of seven years doubled to 14 years due to a strike prior; a one-year enhancement for a knife allegation (§ 12022(b)(1)); a three-year enhancement for a great bodily injury allegation (§ 12022.7(a)); and five years for a serious felony prior (§§ 667(a)(1), 668).

In June 2024, after Littlejohn's conviction in case number SCD295372, the trial court sentenced Littlejohn in case number SCD295372 and

9

simultaneously resentenced him in case number SCE413231. The court denied Littlejohn's motion to strike his strike prior but declined to impose any serious felony prior enhancement.

The court ultimately sentenced Littlejohn to a combined prison sentence of 14 years to life plus 24 years. In case number SCE413231, the court sentenced Littlejohn to the seven-year middle term for count 1, doubled by the strike prior to 14 years, and added a one-year term for the knife allegation (§ 12022(b)(1)) and a three-year term for the great bodily injury allegation (§ 12022.7(a)). It again stayed count 2.

As to case number SCD295372, the court sentenced Littlejohn to a sentence of seven years to life on count 1, doubled by the strike prior to 14 years to life; time served on counts 2 and 3; one-third the three-year middle term for count 4, doubled to two years, with count 5 stayed under section 654; and one-third the two-year middle term for counts 6, 7, and 8, doubled to 16 months each.

All the terms were to run consecutively.

## II.

## A.

As an initial matter, Littlejohn contends the trial court erred in admitting evidence of the February 2021 incident involving Littlejohn, M.K., and M.K.'s cousin under Evidence Code section 1108 because (1) the conduct was not a "sexual offense" and (2) the evidence should have been excluded under Evidence Code section 352. We conclude Littlejohn forfeited his first challenge and that the court did not abuse its discretion in admitting the evidence.

1.

Generally, "evidence of a person's character . . . is inadmissible when offered to prove his or her conduct on a specified occasion." (Evid. Code, § 1101, subd. (a).) But if a defendant is charged with a sexual offense, "evidence of the defendant's commission of another sexual offense . . . is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (§ 1108(a).) Section 352 vests the court with discretion to "exclude evidence if its probative value is substantially outweighed by" the possibility of "undue consumption of time," "undue prejudice," confusion of the issues, or misleading the jury. (§ 352.)

"We review a trial court's admission or exclusion of evidence under the Evidence Code for abuse of discretion and reverse only if the evidentiary ruling was arbitrary or capricious as a matter of law." (*People v. Ranlet* (2016) 1 Cal.App.5th 363, 374.)

2.

The People contend Littlejohn forfeited his first contention—that the uncharged February 2021 act was not properly admitted under section 1108 because it was not a "sexual offense"—by failing to object on that basis in the trial court. Littlejohn claims a forfeiture exception applies given the court had previously ruled "that evidence of charges involving M[.]K[.] would be cross-admissible in a trial of charges involving J[.]N[.]," so "[a]ny further argument under Evidence Code section 1108 would thus have been futile." We disagree.

Forfeiture applies here. While the record suggests further argument as to the *charged* offenses and whether they were admissible as section 1108 evidence as to each other would have been futile, the same is not true of the *uncharged* February 2021 incident.

11

Indeed, shortly after the court reaffirmed its section 1108 ruling as to the charged offenses, the court inquired whether the prosecution planned to call M.K.'s cousin, who was listed on the prosecution's witness list. The prosecutor explained he was going to ask both M.K. and her cousin "about any incidents involving the defendant that seemed inappropriate in their mind" because "it goes to M.K., the rest of her testimony and provides context of the relationship, for lack of a better word." The court said it would "allow M.K. to testify under [section] 1108 in reference to this other incident" as a "credibility issue" for which the evidence's "probativeness outweighs any prejudicial effect." Assuming M.K. testified to the incident, the court further said it would allow the cousin to testify "only to corroborate what M.K. says." Littlejohn's counsel said she "would just object and refer back to our whole discussion on the 1101 issue," but did not—despite having the opportunity—object on the basis that the incident was not a "sexual offense" under section 1108(d)(1).

Accordingly, because Littlejohn failed to raise this argument in the trial court, he failed to preserve this argument for appeal. (See *People v. Pierce* (2002) 104 Cal.App.4th 893, 898.)

3.

To the extent Littlejohn contends the trial court abused its discretion in failing to exclude the evidence under section 352, that argument fares no better.

When engaging in the section 352 analysis as to section 1108 evidence, "trial judges must consider such factors as [the evidence's] nature, relevance, and possible remoteness[;] the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry[;] its similarity to the charged offense[;] its likely prejudicial impact

12

on the jurors[;] the burden on the defendant in defending against the uncharged offense[;] and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense." (*People v. Falsetta* (1999) 21 Cal.4th 903, 917.)

Littlejohn primarily contends the evidence of the February 2021 incident had little probative value and was likely to confuse or distract jurors. But we conclude otherwise.

First, the evidence was probative. As the People note, the uncharged incident was similar to the charged acts in that (1) they all occurred in or directly outside of M.K.'s bedroom within less than a year and (2) the uncharged incident, like the October 2021 charged act, happened during the middle of the night. The cousin's corroboration of the uncharged event also was probative in that it corroborated M.K.'s account and bolstered her credibility by showing the jury she was not making up that offense and was accordingly less likely to have made up the charged incidents. Sex offenses "are usually committed secretly and result in trials that are largely credibility contests." (*Falsetta*, 21 Cal.4th at p. 918.) The evidence therefore had significant probative value.

On this record, we cannot conclude the court acted arbitrarily or capriciously in finding the evidence's "probativeness outweighs any prejudicial effect." The jury was unlikely to be confused by the introduction of the evidence because the February 2021 incident involved both M.K. and her cousin, while the other incidents involved only M.K. The evidence was also less inflammatory than the charged offenses, as Littlejohn neither touched nor spoke to M.K. during the uncharged incident. Nor was the evidence overly time-intensive, given the testimony about the uncharged

13

incident only involved roughly 25 pages of testimony from M.K. and her cousin out of a more than 1,000-page reporter's transcript. (See *People v. Frazier* (2001) 89 Cal.App.4th 30, 42 [uncharged acts evidence taking up 27 percent of trial transcript not an undue consumption of time].) Even though Littlejohn was never charged with nor convicted of the uncharged offense, the burden to defend against the allegation was minimal. And the February 2021 incident, which occurred within a year of the charges involving M.K. and a year and a half of the charges involving J.N., was not remote. Accordingly, while such evidence is innately prejudicial, when weighed against its probative value, it is not unduly so.

Because we conclude the trial court did not err, we need not reach the issue of prejudice.

### B.

Littlejohn challenges the sufficiency of the evidence of intent underlying his conviction of three counts of lewd acts upon a child of 14 or 15 years of age under section 288(c)(1). We conclude substantial evidence of intent supports both the one conviction premised on the October 2021 incident and the two for the August 2021 incidents.

### 1.

As relevant here, a violation of section 288(c)(1) requires that a defendant touch a child "with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child." (§ 288(a) [intent incorporated into § 288(c)(1)].) "Each case involving a lewd act must be decided on its own facts." (*In re Paul C.* (1990) 221 Cal.App.3d 43, 54.) If "the defendant's physical conduct might be consistent with a nonsexual purpose, the jury can look to surrounding circumstances and rely

14

on them to draw inferences about his intent." (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1160.)

When a party challenges the sufficiency of the evidence, "we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Thomas* (1992) 2 Cal.4th 489, 514.) Such evidence can include not only circumstantial evidence, but also all reasonable inferences drawn from it. (*People v. Soriano* (2021) 65 Cal.App.5th 278, 286.)

2.

First, substantial evidence supports Littlejohn's conviction of one count of lewd acts premised on the October 2021 incident, when Littlejohn touched M.K.'s vaginal area.

Littlejohn argues the evidence "arguably" supports finding he committed an "offensive touching" but not that he "harbored a specific intent to arouse . . . his or M[.]K[.]'s sexual desires" beyond a reasonable doubt. Littlejohn further claims the evidence of his drug use undermines his ability to have formed the requisite intent. The People, on the other hand, argue that Littlejohn touching M.K. on a "body part[] commonly understood to be sexual in nature" while making "an unequivocal, sexually charged remark" adequately evidences his intent. They claim Littlejohn's arguments impermissibly "require[] this court to reweigh the evidence and reevaluate the witnesses' credibility." We agree with the People.

Littlejohn's actions and accompanying remark make it impossible to imagine any reasonable jury inferring anything but lewd intent on Littlejohn's part. This inference is all the truer where, as here, the jury was

15

entitled to consider evidence of other charged acts as propensity evidence. That Littlejohn had made nearly the same remark to J.N. while touching the same body part strengthens the inferred intent of personal sexual gratification here.

While the jury was entitled to believe Littlejohn's testimony that he was frequently high during the relevant time period and infer from that he was unable to form the requisite intent, the jury was equally entitled to credit (1) Littlejohn's own statement that he was a functional drug user, (2) the toxicologist's testimony that methamphetamine increases libido, and (3) the toxicologist's testimony that methamphetamine and PCP do not prevent a user from engaging in goal-oriented decision making.

Ultimately, by convicting rather than acquitting, the jury implicitly found Littlejohn's testimony not as credible as M.K.'s. We are not empowered to reweigh the evidence or disregard that finding on appeal. (*People v. Cook* (1968) 263 Cal.App.2d 638, 641 ["A reviewing court may not reweigh the evidence or reject the jury's finding on the credibility of witnesses or set aside its determination of fact."].)

In short, sufficient evidence supports the jury's finding that Littlejohn harbored the requisite specific intent during the October 2021 incident.

3.

As to the August 2021 incidents—where Littlejohn touched M.K.'s bottom while she was exiting and returning to her bedroom—Littlejohn contends (1) the evidence that he touched M.K.'s bottom only with the back of his hand and (2) the lack of any evidence he grabbed or caressed her or that either party was aroused mean the People failed to carry their burden of establishing intent. He says while perhaps "irritating or annoying," his actions do not evidence a sexually motivated touching. The conviction is thus

based "on pure speculation." The People, meanwhile, contend Littlejohn "touching the same person twice in the same body part just minutes apart without ever exhibiting surprise or remorse showed they were not accidents."

Were these the only sexual offenses before the jury, we would likely agree with Littlejohn. But considering all the evidence—including, critically, the propensity evidence of the other charged offenses—we conclude the record contains substantial evidence of Littlejohn's lewd intent.

On this record, the jury was entitled to infer that one touch while someone walks past is likely accidental but two so close together were intentional, particularly with the increased pressure on the second touching. It could reasonably consider that the buttocks can be a sexualized part of the body. The jurors could properly consider Littlejohn's expressly lewd actions several months later and infer that the August 2021 touchings were less overt attempts to also gratify Littlejohn's sexual desires.

Littlejohn's other actions while touching M.K.—standing stock-still and staring at a wall—are undoubtedly odd, and the jury could have concluded he was under the influence of drugs to an extent that he was unable to form the requisite specific intent. But it did not, and we do not reweigh the evidence when it supports the conclusion the jury in fact reached here.

Accordingly, we conclude sufficient evidence supports the jury's implicit finding that Littlejohn touched M.K. in August 2021 with the intent to gratify his sexual desires.

### C.

Littlejohn also claims insufficient evidence existed of his intent to rape J.N. to support his conviction of assault with the intent to commit rape in the course of a first degree burglary under section 220(b). We conclude otherwise.

17

1.

As relevant here, under section 220(b), it is a crime for someone to, "in the commission of a burglary of the first degree, . . . assault[] another with intent to commit rape." To obtain a conviction on this charge, "'the prosecution must prove . . . an intent on the part of the defendant to use whatever force is required to complete the sexual act against the will of the victim.'" (*People v. Greene* (1973) 34 Cal.App.3d 622, 648.) Thus, at issue is the defendant's state of mind. (*Ibid.*)

"'The specific intent with which an act is done may be shown by a defendant's statement of his intent and by the circumstances surrounding the commission of the act.'" (*People v. Craig* (1994) 25 Cal.App.4th 1593, 1597.) Jurors also "'may draw inferences from [the defendant's] conduct, including any words the defendant has spoken.'" (*Ibid.*)

We review the jury's implicit finding of intent to commit rape for substantial evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 399.)

2.

Under this deferential standard of review, the record contains sufficient evidence of Littlejohn's intent to rape J.N. Although Littlejohn contests J.N.'s account, we must view the evidence in the light most favorable to the judgment, and the testimony of one witness—even the victim of a crime—can be substantial evidence. (See *People v. Cortes* (1999) 71 Cal.App.4th 62, 71, 73-74.)

Littlejohn claims the evidence fails to show the relevant intent because "he did not use force to attempt to commit sexual penetration without [J.N.'s] consent," "take off his clothes, attempt to take off her clothes, touch her vagina area or any area under her clothes, fondle or kiss her, or otherwise act to pursue intercourse against her will." According to Littlejohn, "[a]t most,

[his] acts reflect that he was intending to determine J[.]N[.]'s willingness to engage in a sexual encounter, and arguably committed an unlawful touching, but not that he intended to pursue sexual intercourse without her consent and by use of force, duress, menace[,] or fear of immediate bodily injury."

Littlejohn relies on *Greene* to support his position. There, the defendant was walking toward the victim at night on the street. (*Greene*, 34 Cal.App.3d at p. 629.) The defendant put his arm around the victim's waist, turned her around, told her he had a gun, and started walking with her. (*Id.* at pp. 629, 650.) He told the victim to put her arm around his waist, which she did, and that he "'just want[ed] to play with [her].'" (*Id.* at p. 629.) "[H]e moved his hand up and down her waist a little." (*Id.* at pp. 629, 650.) The victim broke away from his grasp and ran away after six or seven minutes. (*Id.* at pp. 629, 650.) The victim testified that she was afraid she would probably be raped. (*Id.* at p. 651.)

*Greene* concluded "there is no substantial evidence to support the jury's implied finding of the requisite intent." (*Greene*, 34 Cal.App.3d at p. 653.) The victim's "subjective evaluation of the situation cannot make an assault with intent to commit rape out of a simple touching which objectively can only be attributed to attempted seduction, or an attempt to secure the satisfaction of some unnatural or abnormal sexual interest, short of actual sexual intercourse," as "a sizeable portion of the youth of this state would be subject to prosecution and imprisonment . . . if convictions could be obtained for violation of Penal Code section 220 on such flimsy evidence." (*Id.* at pp. 651-652.)

*Greene*, however, is distinguishable. Here, the relevant events began when Littlejohn entered J.N.'s bedroom while she was lying asleep in her bed rather than conscious in a public setting. While both J.N. and the *Greene*

19

victim experienced unwanted touchings, unlike in *Greene*, Littlejohn pushed J.N. downward and toward her bed not once, but twice, the second time after J.N. told Littlejohn he "needed to get out of here." A reasonable jury could infer these were attempts to position J.N. on the bed for an act of sexual intercourse against her will, particularly given Littlejohn's statement minutes later that J.N. "needed some good dick."

The foregoing evidence suffices to establish Littlejohn's intent to rape J.N. That Littlejohn could have gone further by, as Littlejohn suggests, exposing himself or touching more intimate areas of J.N.'s person is irrelevant. (See *People v. Pendleton* (1979) 25 Cal.3d 371, 377 ["Admittedly, defendant did not kiss Kathleen, remove her panties, touch her private parts or engage in certain other conduct commonly associated with attempted rape. However, his failure to do so tells us more about Kathleen's pluck than about defendant's intentions."].)

Littlejohn contends his intoxicated state at the time could "potentially negate specific intent." As the People argue, however, the jury was entitled to—and, based on the verdict reached, apparently did—credit (1) the toxicologist's testimony that methamphetamine and PCP do not prevent the user from engaging in goal-oriented behavior and (2) Littlejohn's own testimony that he was "in control" despite ingesting intoxicating substances before the incident.

In sum, considering all the circumstances surrounding the event, substantial evidence underlies the jury's implicit finding that Littlejohn intended to rape J.N. "While other reasonable inferences also might be drawn, it was for the jury, not us, to draw them." (*Craig,* 25 Cal.App.4th at p. 1604 [sufficient evidence of intent to rape where defendant confronted

20

victim near her car, grabbed her hair, pushed her into driver's seat, and shoved hand inside her sweater and touched breasts over bra].)

D.

Finally, Littlejohn requests—and the People do not oppose—we review the sealed transcript of the trial court's in camera review of records related to his *Pitchess* motion.  Specifically, Littlejohn sought discovery of the human resources files of and any investigative reports concerning the officers who detained him relating to issues including use of force, racism, or untruthfulness.

A criminal defendant may obtain access to such files upon showing "the requested information will facilitate the ascertainment of the facts and a fair trial."  (*Pitchess*, 11 Cal.3d at p. 536; Evid. Code, § 1043.)  If a trial court denies production of such materials, we review "the 'record of the documents examined by the trial court' [to] determine whether the trial court abused its discretion."  (*People v. Rodriguez* (2011) 193 Cal.App.4th 360, 366.)

Having reviewed both the reporter's transcript of the in camera proceedings and the documents reviewed in camera, we conclude the trial court did not abuse its discretion in denying discovery of the officers' records.

III.

We affirm.

CASTILLO, J.

WE CONCUR:


IRION, Acting P. J.


KELETY, J.

21